## MARCH, 1930.

JAMES H. GREEN, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, APPELLANT.—30 S. W. (2d) 784.

Springfield Court of Appeals. July 29, 1930.

518

E. T. Miller, W. P. Elmer and Phil M. Donnelly for appellant.

*John H. Bradley, C. O. Inman* and *W. H. Douglass* for respondent.

SMITH, J.—Plaintiff filed this suit for damages which he alleged he sustained on account of injuries caused by an inefficient hand brake while he was at work for defendant in interstate commerce.

The petition is rather lengthy, the principal part thereof being as follows:

"Plaintiff for his cause of action says that on or about the 30th day of April, 1926, he was employed by the defendant and engaged in switching cars in the defendant's Gratiot street yards in the city of St. Louis, Missouri, making up a train for the defendant to be hauled from the city of St. Louis, Missouri, to the city of Tulsa in the State of Oklahoma; that the train was being made up on a track in said yards by switching cars onto said track and coupling them together; that the cars being switched onto the track for the purpose of making up said train were located in or near said yards of the defendant and among other cars in said yard; that one of the

cars that was to be put into said train was a car loaded with joints of pipe placed onto the car in three rows or tiers; that the custom and practice of making up trains as was being done at the time was to kick the cars that went into the train onto the track, and a switchman would then mount the car in order to control its movement with brakes when coupling it onto the cars being made up into a train; that the car of pipe aforesaid was kicked onto the track in the usual and customary manner where said train was being made up and the plaintiff, as was his duty, climbed upon said car in order to control its movement with the brake in order to prevent it from coming in contact with the other cars it was to be coupled onto with such force as to move or damage them; that plaintiff took hold of the brake wheel and attempted to set the brake by turning the wheel in the usual and customary manner to set the brake and the brake would not hold; that plaintiff could not set the brake and tighten it so that it would check the speed of the car and slow it down so as to couple onto the other cars by the usual compact in making the coupling; that on account of the inability of plaintiff to set the brake so it would control the movement of said car it came in contact with the other cars with great, unusual and violent force; that as a result of the violent force of the impact the pipe moved or shifted forward on said car and against plaintiff's leg and knee, and crushed and injured plaintiff's left leg and knee; that the injuries consist of a broken knee joint, broken bones and cartileges at and about the knee joint, bruised, strained and contused soft parts of the knee and of the leg above and below the knee; that as a result of the said injuries plaintiff's left leg and knee have become infected, the skin and the soft parts poisoned as a result of the infection; that small boils and sores have formed as a result of the infection; that where these have healed it has left scars and pigment deposits; that as a further result of said injuries plaintiff was unable to work for several weeks; that after plaintiff had been off from work for several weeks he went back to work and tried to work; that he suffered severe pains and discomfort while trying to work on account of the injuries to his leg and knee, and at intervals plaintiff was required to lay off from one to two or three days at a time on account of the injuries to his leg and knee as aforesaid; that about the 4th day of December, 1926, plaintiff had to quit work on account of the injuries which he sustained to his knee as aforesaid and has been unable to do any work since said day; that as a result of the injuries aforesaid plaintiff was confined to the hospital for several weeks; that he has undergone several operations; that he has suffered and in the future will continue to suffer severe physical and mental pain; that it will be necessary to perform other operations in order to relieve plaintiff of the pain and suffering from his said injuries; that plaintiff was

unable to walk for several days and is now unable to walk except with the assistance of a cane or crutch; that his knee and leg is permanently crippled, its use and function permanently impaired, and causes plaintiff to walk with a limp; that he is unable to do any work which requires him to be on his feet on account of the injuries to his leg and knee; that plaintiff has lost his wages since said injury, and in consequence thereof, at the rate of about one hundred seventy-five dollars per month and is permanently incapacitated from following his work as a railroad switchman; that his earning capacity has been greatly and permanently impaired; that plaintiff will be put to an expense or incur an indebtedness for doctors' bills in treating and caring for his said injuries.

"Plaintiff further says that it was usual and customary in loading pipe on cars to block or tie it; that the pipe on said car was not blocked or tied down so as to prevent it from moving or shifting on said car, and that the defendant negligently failed to have the pipe blocked or tied down so that there would not be danger of it moving and shifting and injuring plaintiff or other employees whose duties required them to be on the car in order to set the brake when switching the car against other cars and that the injury to plaintiff was caused in whole or in part on account of the negligence of the defendant in failing to block or tie or caused to be blocked or tied the pipe on said car so as to prevent it from moving or shifting.

"Plaintiff further says that the defendant was hauling or using said car on its line and failed to have said car equipped with an efficient hand brake in working order as required by the Federal Safety Appliance Act so that plaintiff could control the movement of said car, and check its speed, and thereby prevent it from coming in contact with the other car or cars with such force as to cause the pipe on the car to move or be shifted against plaintiff's foot and leg and injure him as aforesaid."

The petition closed with a prayer for sixty-five thousand dollars damages.

The answer denied generally the allegations of the petition and averred that whatever injuries the plaintiff received were caused or contributed to by the carelessness and negligence of the plaintiff, in that the plaintiff placed his leg at the end and on the inside of a car loaded with iron pipes with full knowledge of the danger thereof, and knew or should have known that in moving or switching a carload of iron pipes that there is a moving or shifting of the load, and that switching the car and bumping against other cars that load would likely move or shift against the end of the car, and notwithstanding this knowledge plaintiff placed his leg on the inside of the car when the car was being moved, and that so placing his leg was care-

522

lessness and negligence which directly contributed to or caused his injury.

The answer further averred that the injury sustained by plaintiff was the result of the risk assumed by him since the plaintiff through his experience from having been in the employ of defendant for a great length of time knew how to do the work in which he was engaged, and knew that in placing his leg at the end of and on the inside of the car loaded with iron pipes the pipes were likely to be moved or shifted against his leg and injure it, and that said danger was open and obvious to the plaintiff.

The answer further averred that on May 19, 1926, the plaintiff executed and delivered to the defendant written releases whereby, in consideration of the sum of eighty-five dollars paid to him by the defendant the plaintiff compromised his claim for injuries described in the petition, "and did release and forever discharge defendant from any and all liabilities for all claims for damages for all injuries, including those that might thereafter develop, as well as those then apparent, and did release and discharge defendant of all suits, actions, causes of action, and claims and demands for injuries and damages which he then had or might thereafter have, arising out of the injuries and damages alleged in said petition, either to his person or property, and did thereby acknowledge full satisfaction of all such liability and causes of action; that verified copies of said original releases are hereto attached, marked "Exhibit A" and "Exhibit B" and made a part hereof, and defendant now and here pleads said written releases in bar of plaintiff's cause of action alleged and set forth in his said petition.

"For further answer and defense defendant avers that on May 19, 1926, plaintiff, for a valuable consideration paid to him by defendant, did compromise, settle and adjust his claim and cause of action for said injuries complained of in said petition, and did release and forever discharge defendant from any and all liability to plaintiff by reason of said injuries for his alleged cause of action therefor.

"For further answer and defense to plaintiff's petition herein, defendant avers and charges that subsequent to December 4, 1926, plaintiff represented to defendant that he had received certain injuries to his left knee and leg on December 4, 1926, while employed by defendant as a switchman, at which time, while alighting from a moving caboose to throw a switch, he fell and then and there injured his left knee and leg, the same left knee and leg for which plaintiff is now claiming damages in his petition herein, for alleged injuries which are alleged in his petition to have occurred to his left knee and leg on April 30, 1926; that plaintiff alleges in his petition that after his injuries in April, 1926, he went back to work

but he alleges that on account of the injuries which he alleges he received on April 30, 1926, he was unable to work and had to quit . work on December 4, 1926, but plaintiff does not allege nor inform defendant whether or not he had to quit work because of the injuries which he represented to defendant that he received on December 4, 1926, that defendant is unable to state whether or not the injuries which plaintiff now claims he is suffering from are the result of the injuries which plaintiff represented to defendant that he received on December 4, 1926, but defendant states and charges that, if the injuries which plaintiff now claims he is suffering from are the result of the injuries which he received on December 4, 1926, while alighting from a moving caboose to throw a switch and fell and as a consequence of which he injured the same left knee and left leg, then defendant charges that plaintiff, on January 10, 1927, executed and delivered to defendant written releases, whereby in consideration of the sum of two hundred dollars ($200) paid to him by defendant, plaintiff compromised his claim for injuries claimed and alleged to have been sustained by him on or about December 4, 1926, by reason of plaintiff alighting from a moving caboose to throw a switch, at which time he then and there ·fell and injured his left knee and left leg which is the same left knee and left leg that plaintiff alleges in his petition was injured on April 30, 1926, and plaintiff did by said written releases, release and forever discharge defendant from any and all liability for all claims for damages for all injuries, including those that might thereafter develop, as well as those then apparent and did release and discharge defendant of all suits, actions, causes of action, and claims and demands for injuries and damages which he then had or might thereafter have, arising out of the injuries and damages claimed to have been received by him on December 4, 1926, while employed as a switchman at St. Louis, Missouri (while alighting from a moving caboose to throw a switch, he fell, as a consequence of which he was then and there injured), either to his person or property, and did thereby acknowledge full satisfaction of all such liability and causes of action; and did on January 10, 1927, for a valuable consideration paid to him by defendant, compromise, settle and adjust all claims and causes of action for injuries received by him on December 4, 1926, and did release and forever discharge defendant from any and all liability to plaintiff by reason of said injuries on December 4, 1926; that verified copies of said original releases are hereto attached, marked "Exhibit C" and "Exhibit D" and made a part hereof, and defendant here and now pleads said written releases in bar of any claim or cause of action claimed by plaintiff by reason of injuries received by him on December 4, 1926, as aforesaid."

The plaintiff filed a verified reply denying the allegations in answer and further replied by admitting that he signed releases, Exhibits A and B, but that his signature was procured thereto either through false representations of the defendant's physician as to plaintiff's condition, or through the mistake of said physician as to plaintiff's condition; that said physician examined plaintiff at the request of defendant's claim agent, and either falsely represented to plaintiff, or stated to plaintiff as a fact, which is not a fact, that plaintiff was able to go to work; that these statements were not true, but plaintiff believed them to be true, and was thereby induced to settle his claim and sign the releases, and that within a reasonable time after he learned of the fraud perpetrated upon him, or the mistake of the doctor as to plaintiff's condition, he tendered back to defendant the money paid him plus legal rate of interest thereon, which amount the defendant refused to accept.

With reference to releases, Exhibits C and D, plaintiff replied that he had no knowledge or information at the time he signed said papers that they were releases or claimed by the defendant to be releases; that at the time he signed said papers he was unable to read same, and that at the time he signed them the claim agent who procured his signature represented that Exhibit C was a check or voucher for wages from December 4, 1926, to January 10, 1927, and that Exhibit D was a statement of facts covering the manner in which plaintiff fell while alighting from a caboose in the course of his employment on December 4, 1926; that in signing said papers he relied upon the statement of the claim agent, and that said statements were false and untrue and made by defendant's claim agent for the purpose of inducing plaintiff to sign such exhibits.

Plaintiff again asked for judgment as in his petition prayed, less two hundred ninety-one dollars which amount plaintiff had received from defendant.

Trial was had and judgment rendered on December 6, 1927, in favor of plaintiff for $5000. In due time proper steps were taken for an appeal to this court.

Before the answer was filed a motion was filed by the defendant to make plaintiff's petition more definite and certain in which it was stated ''that plaintiff alleges that defendant failed to have said car equipped with an efficient hand brake in working order as required by the Federal Safety Appliance Act, but plaintiff does not allege or specify wherein or in what respect said hand brake was not in working order, or in what particular said hand brake was not efficient.

''And that plaintiff's petition is further indefinite in that it does not allege or specify wherein or in what respect said hand brake was not in working order, or in what particular said hand brake

was not efficient, and wherein and in what respect said defect or inefficiency, if any, was the cause of the injuries which plaintiff alleges he sustained.

"That said allegations of plaintiff's petition are so general, vague and indefinite that defendant cannot determine the precise or exact defect, if any, in said brake and cannot determine or ascertain the precise nature of plaintiff's charge against defendant, and cannot satisfactorily plead to plaintiff's petition."

This motion was overruled and exception saved, and this point is insisted on here as being error.

Following the most recent decisions of our Supreme Court we must rule that since the defendant answered and went to trial on the merits of the case, error, if any, was waived by defendant. [State ex rel. v. Trimble et al., 18 S. W. (2d) 4, 5, and cases cited; Kitchen v. Shueter Mfg. Co., 20 S. W. (2d) 676.]

The defendant claims error in giving plaintiff's instruction No. 4 and in refusing its requested instruction lettered C. Plaintiff's instruction No. 4, is as follows:

"The court instructs the jury that if you find from the evidence in this case that before plaintiff signed the releases in evidence (defendant's Exhibit A and B to its answer) that the defendant's claim agent took plaintiff to one of the defendant's doctors in order to find out plaintiff's condition and when plaintiff would be able to return to work, and that the claim agent did this, if he did, for the purpose of making a settlement with plaintiff on the basis of what the doctor said was plaintiff's condition at the time as to when plaintiff would be able to go back to work, and that the defendant's doctor did examine plaintiff at the request of said claim agent, and that the doctor told plaintiff that he was able to go back to work at that time, and that plaintiff was about well of his injuries, and that the pain and discomfort felt by plaintiff at the time in his knee and leg was due to nonuse and would disappear in a short time with plenty of exercise; and, if you further find from the evidence that the plaintiff believed these statements, if made, to be true, and in reliance on their truthfulness, if so, was induced to settle and sign said releases; and, if you further find from the evidence that said statements of the doctor were not true, if made, and that the doctor either knew at the time he made the statement, if made, that they were not true; or, that the doctor made them, if made, believing them to be true when in fact they were not true, then under these circumstances the releases would not be valid and binding releases."

According to plaintiff's theory of the case he was seriously injured, and testimony was offered to that effect. Testimony was also given that the reason he signed the first releases was because of the statements made by the physician selected by the defendant's claim agent.

Testimony was also offered to show that the physician's statements were not correct, if such testimony were to be believed, and we think under the general rule it matters not whether the error, if it be an error, was caused by an honest or dishonest opinion of the doctor, so selected by the releasee. We find in 23 Ruling Case Law at page 392 this language in point: "The decisions are in practical unanimity in supporting the general rule that if an injured person signs a release relying on a false statement respecting the nature and extent of his injuries at the time of the diagnosis, made by a physician employed by the releasee, he is entitled to avoid the release," and later in the same paragraph we find this language: "It is also generally held that the fact that the statements made by the releasee's physician as to the character of the releasor's injuries at the time of the diagnosis are not intentionally false does not affect the right of the latter to avoid the release."

In the case of Lion Oil Refining Company v. Albritton, 21 Fed. (2d) 280, a case similar to this, we find this language: "Plaintiff claims that the releases were secured by fraud, and that no contract of releases really exists because of mutual mistake; that the minds of the parties never met on any settlement for injury to plaintiff's eyes. Certainly, if the releases were entered into through fraud or mutual mistake, they should be avoided, and the facts could of course be shown by parol evidence. In G. N. Ry. Co. v. Fowler (C. C. A.), 136 Fed. 118, 121, a very similar case to this; the court said "Mutual mistake of fact, or an innocent misrepresentation of the facts of the releasor's injury, made by the releasee's physician, may be effective to avoid a release induced thereby."

This court in the case of Wendell v. Ozark Orchard Co., 200 S. W. 747, 749, uses this language: "It will be found, however that false representations and promises as to what will result in the future, when made by one having or professing to have superior knowledge based on past experience of himself or others, are in effect false representations of existing condition and support allegations of fraud."

It has frequently been held that the question of fraud in procuring a release is one that may properly be submitted to a jury. The case of Berry v. Railroad, 223 Mo. 358, 370, 122 S. W. 709, is in point. From the foregoing it appears that it was not error to give instruction No. 4.

Defendant's refused instruction lettered C, instructed the jury that if Dr. Woolsey in good faith based upon his knowledge as a physician and based upon his knowledge of plaintiff's injuries, believed that the injury was slight and temporary, and in good faith advised plaintiff to go back to work, and that by working and use of the leg the soreness would clear up, and so advised the claim

agent, and that settlement was made with plaintiff by said claim agent for defendant, then said settlement is valid and binding upon plaintiff, and the verdict should be for the defendant, and though the jury may believe the injury of plaintiff is serious and probably permanent and the amount paid him is inadequate to compensate him for his injuries.

In view of the authorities cited above we think the trial court did not err in refusing the instruction requested by defendant.

Further error is assigned in the action of the trial court in giving instruction numbered 2, which is as follows:

"The court instructs the jury that if you find from the evidence that on or about the 30th day of April, 1926, plaintiff was in the employ of the defendant, and that he attempted to set a brake on a car in the performance of his duties, and at the time he was employed in interstate commerce, and that the brake failed to hold, as designed and intended; that after the brake failed to hold, if so, and the brake was released, if so, that plaintiff attempted to hold the brake on with his hands in order to prevent the cars from jamming into or running against other cars, and in doing so, if he did, he placed his leg over the end of the car, and that the car ran into or against the other cars with such force as to cause the pipe to slide against plaintiff's leg and injure it, and that the injuries to his leg, if any, were caused, in whole or in part, on account of an inefficient hand brake, if any, on the car; and if you further find from the evidence that the releases signed by the plaintiff are not valid and binding releases, but were obtained by fraud or mistake, as set out in other instructions, and that within a reasonable time after plaintiff learned of said fraud or mistake, if you find the releases were procured through fraud or mistake, that the plaintiff tendered back to the defendant before the filing of this suit the amount he received when he signed said releases with six per cent interest thereon, then your verdict will be for the plaintiff."

Complaint is made of this instruction in the use of the words "The court instructs the jury that if you find from the evidence . . . that the brake failed to hold, *as designed and intended*" (italics ours), in that the words "as designed and intended" are misleading and confusing and would permit the jury to assume facts that might or might not exist.

The petition alleged "that plaintiff took hold of the brake wheel and attempted to set the brake by turning the wheel in the usual and customary manner to set the brake and the brake would not hold." The plaintiff testified on this point and a part of his language is as follows:

"Q. You say you got on it right after it left the switch stand? A. Right after it started in on the track.

"Q. When you put the brake on the second time, as you say, did it hold then? A. No, it wouldn't hold without I held my foot against the dog. The dog wouldn't stay in the ratchet."

The question of the brake's failure to hold was the allegation of the petition, and was the subject of the testimony, and was the question submitted in the instruction to the jury. The words "as designed and intended" might as well have been left out of the instruction, but it is a matter of such common knowledge to juries, as well as courts, that brakes are designed to hold and intended to slacken speed, that it would be going too far to say that the language was misleading and confusing or that it assumed certain facts that might or might not exist.

Complaint is also made that this instruction uses the word "fraud or mistake" and does not define the words. A reference to this instruction will show that these words are followed by the words, "as set out in other instructions." We think the meaning of the words "fraud or mistake" are sufficiently given in other instruction submitted to the jury. The defendant did not request any further or different definition to these words, and its failure to offer any such instruction waived error, if any. [Dobbs v. Railway Co., 202 S. W. 276; Rippetoe v. Railway, 138 Mo. App. 402, 407, 122 S. W. 314.]

Complaint is made of the court's failure to give instruction lettered E which undertook to tell the jury that if the jury found the plaintiff was not using ordinary care and exercising ordinary prudence at the time of his injury, and that to fail to use such care and prudence was the sole cause of his injuries then the verdict should be for the defendant. In support of this contention the defendant cited, and relied on, the case of Schlemimer v. B. R. & P. Ry. Co., 220 U. S. 596, 597. As we read the Schlemimer case and understand it that case was determined upon the allegation of contributory negligence, and we think the defendant was artfully trying to submit the question of contributory negligence under the guise of ordinary care and ordinary prudence, for in the Schlemimer case we find this definition of contributory negligence: "Contributory negligence, on the other hand, is the omission of the employee to use those precautions for his own safety which ordinary prudence requires. [See in this connection, Narra More v. Cleveland, C. & C. & St. L. R. Co., 48 L. R. A. 68, 37 C. C. A. 499, 507, 96 Fed. 298.]"

We think the Schlemmer case does not sustain defendant's contention for at the time of the injury complained of in that case contributory negligence was a defense to such actions. Defendants concede that contributory negligence and assumption of risk are now barred as a defense under the provisions of the Safety Appliance Act.

Further complaint is made as to the court's refusal to give its requested instruction lettered H, which is as follows:

"The court instructs the jury that if you find from the evidence that on or about the 19th day of May, 1926, the plaintiff was asserting a claim against defendant for any amount of damages for personal injuries alleged to have been received by him, and the defendant was in good faith disputing said claim and on the 19th day of May, 1926, the defendant tendered to the plaintiff the sum of eighty-five dollars with the understanding and on the condition that the plaintiff accept the said sum in full settlement and satisfaction of his claim against the defendant growing out of the personal injuries aforesaid, and that the plaintiff under such conditions and with such understanding did accept the said sum of money and execute a release in full of said claims, including work done by him, then such release must be sustained and held valid and binding upon the plaintiff."

This instruction was modified and given by the court as instruction No. 15, after adding these words "unless you further find from the evidence that such release is invalid under the other instruction herein given."

It will be noted that this instruction deals exclusively with the release which the plaintiff admits he signed on May 19, 1926, but testified he signed the release under a misunderstanding of the facts brought about either by the fraudulent representations or mistake of the releasee's physician, and we think the evidence was sufficient to submit such a question to the jury as had been done in other instructions, and without the words added by the court the instruction would have been contrary to and conflicting with other instructions given, and would have been a peremptory instruction to find for the defendant, since the plaintiff admitted he signed such a release.

The court gave defendant's instruction No. 14, which was an exact copy of its requested instruction lettered H, except it mentioned the release dated January 10, 1927, executed for two hundred dollars which had been paid on that date to plaintiff. This instruction was given without the words added to the other instruction. Defendant contends that this would tend to confuse and mislead the jury because the jury's attention was called to the fact that the release referred to in instruction No. 15 was based upon other instructions given, while No. 14 was a clear-cut release without any conditions attached to it. We think these instructions were not confusing, contradictory, or misleading. Instruction No. 15 submitted the question of a release which the plaintiff admitted he signed on May 19, 1926, but which he claimed should be set aside or not considered binding upon him because of representations made to him to secure

his signature. Instruction No. 14 given at the request of defendant referred to another release dated January 10, 1927, which plaintiff says that he did not know was a release, and that he was induced to sign the alleged release through representation of defendant's claim agent that it was a statement of how the accident happened and for his wages, and that he did not read it because he did not have his glasses, but relied solely upon what the claim agent told him was in it. If plaintiff's theory is correct then this release was void, the other was voidable.

The court had given an instruction presenting plaintiff's theory as to how this release was procured. It told the jury that if they found plaintiff's signature was procured to this release through misrepresentations as claimed by plaintiff then the release would not be binding. Defendant's instruction No. 14 told the jury that if they found at the time plaintiff signed this particular release he knew it was a release in settlement of his claim, then he could not recover.

These two instructions, one for plaintiff and one for defendant, correctly declare the law applicable to the release of January 10, 1927, as pleaded in the answer of defendant and the reply of plaintiff.

The defendant complains that the court erred in permitting plaintiff to make a demonstration in front of the jury by showing his leg to the jury and having it pricked with a knife. The defendant concedes that it is not necessarily error to permit the plaintiff to exhibit the injured leg to the jury, but insist that it was error for the attorney for plaintiff with a knife in his hand, to ask one of the jurors to take the knife and prick the leg, which the juror did. The objection contended for here is not the exhibition of the leg, but the demonstration before the jury and by the juror. The plaintiff contends that no objection was made to the demonstration, or that part, where the juror pricked the knee with a knife, and that because no objection was made and because not mentioned in the motion for new trial it is not available now, if it were error.

We have examined the record and we do not find this assigned as error in the motion for new trial, and we have also examined the record as to what happened at the time of exhibiting the knee to the jury and we find the following occurred:

"MR. DOUGLAS: If the court please, I want to ask him to show that leg and knee to the jury.

"MR. DONNELLY: We object to a demonstration in front of the jury. We don't think it is necessary.

"THE COURT: Objection overruled."

To which action of the court in overruling this objection on the part of the defendant, the defendant, in open court, by counsel, objected and excepted at the time.

The witness here exhibited his knee and leg to the jury.)

"BY MR. DOUGLAS:

"Q. Now, where was that operation, Mr. Green? Is that the scar? A. Yes, sir.

"Q. Now, what are these places, the spots that we see? A. That is where they have cut the leg, from the ulcers.

"Q. Now, are there any other spots over here? A. Forty-four of them on there.

"Q. Now, with reference to feeling, what is the condition of your leg there? A. It is asleep. You can stick a needle through there and I won't feel it.

"Q. Can you feel the prick of a pin or anything in there at all along there? A. From here down (indicating).

"Q. From here down you can feel it? A. Yes, sir.

"Q. From this point along there can you feel the prick of a pin? A. I don't think I can; I ain't tried it to see.

"MR. DOUGLAS: I will ask the jurors to take my knife and prick that and see.

(The juror did so.)

"MR. DOUGLAS: He said up in here (indicating). Along in there anywhere.

"Q. Did you feel any pain from that? A. No, no pain to it. It is dead, I tell you; it is dead. It is just like it is asleep. I don't think it will bleed.

"MR. DOUGLAS: Can you gentlemen see that black blood?

"JUROR: Yes, we can."

So since there was no objection made to the pricking of the knee and the matter was not called to the attention of the trial court in the motion for new trial, it is not properly here for review. [Johnson v. Brick & Coal Co., 276 Mo. 42, 55, and cases cited, 205 S. W. 615.]

The defendant complains that the verdict is against the weight of the evidence and no substantial evidence to support it, and that its instruction in the nature of a demurrer should have been given at the close of the evidence.

It is not necessary to set the testimony out at length; it sufficeth to say we have gone through the long abstract and we think the evidence was sufficient to justify the court in submitting the issues to the jury, and we think no reversible error was made in introducing the evidence and none in instructions submitting the case to the jury.

The judgment is affirmed. *Cox, P. J.,* and *Bailey, J.,* concur.