**Daniel BURGER, Plaintiff/Appellant,**

v.

**BRIDGESTONE/FIRESTONE, INC., f/k/a Firestone Tire & Rubber Co., and Cigna Insurance Co., Defendants/Respondents.**

No. 66578.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 23, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 24, 1995.

David J. Rauscher, David J. Rauscher, P.C., Clayton, for appellant.

Edward T. Liese, Holtkamp, Liese, Beckemeier & Childress, P.C., St. Louis, for respondents.

CRANE, Presiding Judge.

A workers' compensation claimant appeals the trial court's grant of summary judgment in favor of employer and insurer on his amended petition to set aside the compromise lump sum settlement which had been approved by the Administrative Law Judge. Claimant sought relief on the grounds that he entered into the settlement based on the treating doctor's opinion that claimant had recovered from a spider bite and the doctor expected no long-term complications; however, after the settlement claimant developed serious complications resulting from the spider bite. We affirm.

Claimant Daniel Burger was a mechanic employed by Bridgestone/Firestone, f/k/a Firestone Tire & Rubber Co. (employer) on May 23, 1988. On that date a spider bit him on the right shoulder when he changed into an employer-provided work shirt at employer's place of business. Several hours later claimant began to feel ill and he experienced pain in his arm, difficulty breathing, general achiness and a high fever.

Claimant went first to Med Stop for treatment, then to Dr. M. Jay Walden on May 25. Dr. Walden believed that claimant was suffering from the systemic effects of the venom of a brown recluse spider bite. He put claimant on antibiotics and aspirin and monitored claimant's condition for the possible

development of hemolytic anemia which causes the destruction of the patient's red blood cells. Dr. Walden referred claimant to Dr. Martin Altpeter, a surgeon, because skin was necrosing at the site of the bite. On May 26 or 27, Dr. Duvall, a dermatologist, started claimant on the steroid drug prednisone to treat the rash that had developed as a result of the bite. On May 28, claimant's condition worsened and he went to a hospital emergency room where Dr. Walden's partner admitted him to the intensive care unit. Claimant was having a severe hemolytic anemia crisis due to the spider bite. He received six units of whole blood to replace his destroyed red blood cells. He was also given high doses of the steroid prednisolone to suppress the immune reaction that was destroying the red blood cells. Claimant recovered and was released from the hospital on June 3, 1988, but Dr. Walden continued to see him in his office. The last time Dr. Walden saw claimant in 1988 was on June 20.

Claimant returned to work on June 27, 1988. On August 19, 1988, Dr. Walden informed insurer by letter that claimant was in good health and had resumed full-time work. He averred, "I also told them that I expected no long-term sequelae from [claimant's] injury. I made the same representation to [claimant.]"

On June 2, 1988 insurer filed a report of injury with the Workers' Compensation Division. Insurer paid $13,189 for medical treatment and $1,349.08 for temporary total disability for the period May 24, 1988 through June 27, 1988. At a hearing in October, 1989 claimant was advised of his rights and advised to obtain counsel which he did not. Claimant subsequently entered into a settlement agreement for a lump sum payment of $4500 for permanent partial disability of 10% of the right arm at the shoulder. Claimant provided a signed statement to the Administrative Law Judge that he

> understands that by entering into this settlement the [claimant] is forever closing out the [claimant's] claim under the Missouri Workers' Compensation Law; that the [claimant] understands that the [claimant] will receive no further compensation or medical aid by reason of this accident;

that the [claimant] understands that the [claimant] has a right to a hearing of the [claimant's] claim and that as a result of such hearing the [claimant] might receive more money or less money than is provided by the settlement; that the meaning of this settlement has been explained to the [claimant] by the Administrative Law Judge; that the [claimant] is asking the Administrative Law Judge of the Division of Workers' Compensation to approve this settlement.

The settlement was approved by the Administrative Law Judge on November 15, 1989.

On May 18, 1990, claimant saw Dr. Walden again because of pain in his right hip. After tests, Dr. Walden diagnosed claimant as having bilateral avascular necrosis. Avascular necrosis is a process in which the blood flow to the bone is disrupted and over a period of time the bone tissue dies. As a result claimant underwent a double hip replacement in April, 1991. Dr. Walden testified by deposition that the avascular necrosis was caused by the spider bite itself, the associated illness and the treatment. He also testified that the avascular necrosis had started at the time of the spider bite and ensuing treatment, but could not be diagnosed at that time. Furthermore, the avascular necrosis could not be predicted because there are few survivors of hemolysis from brown recluse bites.

Claimant filed a petition in equity to vacate and set aside the settlement and remand the case to the Workers' Compensation Commission. All parties filed motions for summary judgment. The trial court granted employer and insurer's motion.

For his sole point on appeal claimant contends that the employer and insurer were not entitled to summary judgment because genuine issues of material fact remained in dispute "in that there was evidence in the record to indicate that a misrepresentation, mistake or constructive fraud occurred in the procurement of an order approving appellant's compromise lump sum settlement in a worker's compensation proceeding."

■ For the purposes of Rule 74.04 a "genuine issue" of material fact exists if the record contains competent materials that evi-

dence two plausible, but contradictory, accounts of the essential facts. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). Here, there is no dispute with respect to any of the material evidentiary facts. The parties do not dispute that Dr. Walden told claimant that he expected no long term complications. The parties do not dispute that the disruption of blood flow to claimant's hips which led to the avascular necrosis was already occurring as of May or June 1988, but was not diagnosable at that time, and that Dr. Walden did not know or foresee this condition at the time he told claimant that he expected no further complications. Moreover, there is no dispute that Dr. Walden did not tell claimant of the possibility that bilateral avascular necrosis could occur as a result of the spider bite. Claimant relied on these facts and asserted they were undisputed in his own motion for summary judgment. We therefore need only determine whether the trial court correctly determined that employer and insurer demonstrated they were entitled to judgment as a matter of law.

■ The order approving a final workers' compensation settlement is conclusive and irrevocable. *Ley v. St. Louis County*, 710 S.W.2d 493, 496 (Mo.App.1986); *Morgan v. Duncan*, 361 Mo. 683, 236 S.W.2d 281, 284 (1951). Relief from an approved settlement can be had only in a court of equity upon proof of fraud or mistake. *Ley*, 710 S.W.2d at 496; *Morgan*, 236 S.W.2d at 284. Fraud or mistake must be shown in the very act of obtaining the order of approval of the compromise. *Morgan*, 236 S.W.2d at 284; *Shockley v. Laclede Elec. Coop.*, 825 S.W.2d 44, 47 (Mo.App.1992). Claimant argues that the settlement resulted from mutual mistake or misrepresentation.

■ A settlement may be set aside for mutual mistake of a material fact. *Byrd v. Liesman*, 825 S.W.2d 38, 40 (Mo.App.1992). Claimant bases his mutual mistake argument on the premise that both parties settled while under the common misconception that plaintiff had returned to good health and would have no long-term complications.

■ Missouri does not recognize mutual mistake as to the nature and extent of personal injuries as grounds to avoid a settlement or release of claims for such injuries in the absence of inequitable conduct on the defendant's part. *See Sanger v. Yellow Cab Co.*, 486 S.W.2d 477, 481 (Mo.1972); *Byrd*, 825 S.W.2d at 40. The rationale is that the mutual mistake must be from the perspective of both parties and, because a defendant is interested in a release of liability irrespective of the true nature and extent of a plaintiff's injuries, defendant's knowledge of a plaintiff's full injuries would not change the defendant's position in seeking the release. *Sanger*, 486 S.W.2d at 481; *Byrd*, 825 S.W.2d at 40. *See also Hackett v. St. Joseph Light & Power Co.*, 761 S.W.2d 206, 212 (Mo.App. 1988). This conclusion is supported by the record. In answers to interrogatories insurer responded that the lump sum was offered to settle the claim and was not calculated on the basis of a diagnosis or medical records or reports.

■ Alternatively, claimant asserts that Dr. Walden's representation that claimant was in a good state of health and that the doctor did not expect long-term complications constituted a misrepresentation which would support setting aside the settlement. In Missouri an intentional misrepresentation as to a plaintiff's health is grounds to set aside a workers' compensation settlement. *See Ley*, 710 S.W.2d at 496. In *Ley* a doctor retained by employer diagnosed a probable disc injury, but he kept this information from both the claimant and the hearing officer and told the claimant that he had a soft tissue injury instead. *Id.* at 494. We found that the "evidence of concealed information on the nature and extent of plaintiff's injury supports a finding that misrepresentation or constructive fraud was practiced in the very act of obtaining the order of approval." *Id.* at 496.

Claimant recognizes that his case does not involve a doctor's knowing or intentional misrepresentation and therefore does not fall under *Ley*. However, he argues that in an equity action the showing of fraudulent representation does not require knowledge of the falsity or intent to defraud, citing *Oster-*

*berger v. Hites Constr. Co.*, 599 S.W.2d 221 (Mo.App.1980). In *Osterberger,* the court held that an intentional concealment of a material fact where there was a duty to disclose was a substitute element for a false and fraudulent misrepresentation. *Id.* at 227. In this case there is no contention that the doctor intentionally concealed known facts.

■ Claimant next argues that a settlement may be set aside for innocent misrepresentation under the theory of constructive fraud. He cites a passage from *Trokey v. United States Cartridge Co.*, 222 S.W.2d 496, 502 (Mo.App.1949) which in dicta refers to cases in which a settlement had been set aside for constructive fraud where the representation was innocent. *Trokey* states:

> Indeed there are cases which go so far as to say that if the physician's statement is in fact untrue, it is immaterial upon the question of the avoidance of the settlement whether or not the statement was intentionally false. *Felchlin v. Kiel,* Mo.App., 160 S.W.2d 463 [ (1942) ]; *Green v. St. Louis–S.F. Ry. Co.*, 224 Mo.App. 517, 30 S.W.2d 784 [ (1930) ]. In such event the innocent misrepresentation is held to constitute constructive fraud, or fraud in law as it is sometimes called.

*Id.* at 501. In *Trokey,* the appellate court affirmed the trial court's refusal to set aside a settlement on the trial court's finding that the treating doctor's statement was true and did not reach the issue of constructive fraud. *Id.* at 502.

Proof of constructive fraud depends on the actual circumstances of each case. *Fix v. Fix,* 847 S.W.2d 762, 765 (Mo. banc 1993). Courts equate constructive fraud with the violation of a fiduciary, or confidential, relationship. *Id.* It extends to instances in which a special confidence is reposed on one side and there is resulting domination and influence on the other side. *Matlock v. Matlock,* 815 S.W.2d 110, 115 (Mo.App.1991).

In the cases cited by *Trokey,* the defendants engaged doctors to examine the plaintiffs specifically for settlement purposes. In *Felchlin* defendant called the doctor to examine the plaintiff who was injured by a fall on a streetcar. The doctor examined her on the day after the accident and told her there was nothing wrong with her. Defendant's claims agent came to her house the same day and advised her to sign the release because the doctor had said there was nothing wrong with her. *Felchlin,* 160 S.W.2d at 467. In *Green* the court held that the jury could be instructed that a release would not be valid if the jury found that before the plaintiff signed the releases, the defendant's claims agent took plaintiff to defendant's doctor to be examined "for the purpose of making a settlement with plaintiff on the basis of what the doctor said was plaintiff's condition at the time" and the doctor's statement that plaintiff had recovered was untrue whether the doctor knew the statement was untrue or not. 30 S.W.2d at 788. In both cases the claims agent obtained the release shortly after the injury in a transaction directly between the parties. The application of the principles of constructive fraud was based on the defendant's use of the doctor to obtain the settlement and to obtain plaintiff's trust and reliance.

The application of constructive fraud as a basis to avoid a release in the above circumstances does not extend to the present situation. In contrast to the cases cited by *Trokey,* the doctor in this case was claimant's treating doctor for the entire course of the injury and ensuing illness and continued to treat claimant after settlement. The record does not indicate that defendant or insurer had engaged the doctor to examine claimant for settlement purposes[1] or that they were urging settlement based on the doctor's representations. Claimant did not settle his claim until almost fifteen months after the doctor's representations that he was in good health and could expect no long-term complications. The settlement was made in a workers' compensation proceeding after claimant was advised of his rights and with the approval of an administrative law judge. Further, all parties agree that the subse-

---

**1.** Nothing in the record indicates how Dr. Walden was chosen or who chose him to treat claimant. The record only indicates that insurer paid his bills prior to settlement and that insurer "knew" and did not "object" to the treatment.

quent complications were undiagnosable at the time of settlement; there was no claim that the doctor could have predicted the complications based on the known facts. Claimant did not settle because of domination or influence obtained by employer or insurer by their use of a doctor.

Claimant has not shown that the employer and insurer were not entitled to judgment as a matter of law. The trial court's grant of summary judgment is affirmed.

CRANDALL and DOWD, JJ., concur.