JEAN M. HINES, Appellant, v. THE WESTERN UNION TELEGRAPH. COMPANY, a Corporation, and CITY OF JOPLIN, a Municipal Corporation, Respondents.—No. 40648.—217 S. W. (2d) 482.

Division One, January 7, 1949.

Rehearing Denied, February 14, 1949.

*Norman, Foulke & Warten* for appellant.

784

*Scott, Scott & Blair* for respondent The Western Union Telegraph Co.

*Rex Titus* for respondent City of Joplin.

[483] VAN OSDOL, C.—Appeal from a judgment for defendants in an action for $25,000 for personal injury sustained by plaintiff when she stepped, slipped and fell on an icy crosswalk at an alley intersecting Fifth Street between Joplin Avenue and Main Street in Joplin. The judgment was upon a verdict for defendant Western Union Telegraph Company directed by the trial court at the conclusion of all the evidence; and upon a verdict for defendant City of Joplin upon the submitted issues of plaintiff's case against defendant City.

Plaintiff had charged defendant Telegraph Company was a permissive user of Fifth Street, in that such defendant owned and maintained a conduit and manholes in the street for its exclusive and particular purposes and in accordance with an ordinance authorizing the construction and maintenance of underground conduits for cables containing defendant Telegraph Company's lines. Plaintiff charged defendant Telegraph Company was negligent in permitting an accumulation of ice and water at the place where plaintiff fell; in failing to warn pedestrians of the dangerously slick and unsafe condition; in permitting water to accumulate in defendant Telegraph Company's manhole and to run off on the crosswalk when it knew or should

have known the water, in the current winter season, would freeze and so cause the crosswalk to become slick, unsafe and dangerous; and in failing to remove the ice and water, after it had accumulated, and restore the crosswalk to a reasonably safe condition for the lawful use of pedestrians.

Plaintiff charged defendant, City of Joplin, with negligence in failing to keep its streets and alleys in a reasonably safe condition, specifically in failing to remove the accumulation of ice and water when it knew or should have known that water was escaping from the manhole and collecting and freezing on the street and alley where plaintiff fell; and in failing to warn the traveling public of the danger. Defendants by answer raised the general issues and alleged contributory negligence of plaintiff.

Plaintiff-appellant assigns errors of the trial court, (1) in directing a verdict for defendant-respondent, Telegraph Company; (2) in admitting evidence tending to show the original source of the water (which accumulated in and flowed out of the manhole) was the safety drain of a fire hydrant, which hydrant had been left partly open by some employee of the City or of the Joplin Water Works Company; (3) in giving erroneous instructions (Instructions Nos. 1 and 9) at the instance of the defendant-respondent, City of Joplin.

Main Street, Joplin Avenue and Wall Street in Joplin, in respective order from east to west, are north-south streets and are intersected by Fourth and Fifth Streets, east-west streets. Telegraph Company by authority of ordinance has its lines in a conduit under and along Fifth Street. Manholes to permit the servicing and testing of the lines in the conduit are located at intervals along the street; and manholes are necessary in order to make proper cable connections. A manhole is situate near the center of the street at the intersection of Fifth and Wall; and a manhole is located a little southwest of the center of the intersection of the alley (between Joplin and Main) with Fifth Street. Fifth Street is a "heavily traveled street for pedestrians . . . especially on the south side." Defendant Telegraph Company's office is on Fourth Street (north of Fifth Street and on the same alley) between Joplin and Main. The alley accommodates "one way" traffic to the southward so that Telegraph Company's lineman passed near the manhole at the alley and Fifth at such times as he left the office in his truck to perform the duties of his employment. The distance between the two manholes mentioned is approximately 400 feet. The elevation of Fifth declines (eastwardly) from Wall to Main and the grade of the conduit consequently declines, as estimated by defendants' witnesses, two and a half to three and a half feet. The manholes are walled with brick; are about 38″ x 54″ in size, and 6 feet in depth. The conduit between the manholes is of sections of clay tile laid [484] flat and end to end. Each section is 28″ x 9″ x 10″ or 28″ x 7″ x 9″ in size; "they are not sealed, they

are just placed end to end and little pins in each corner and middle to hold them together.'' The conduit has four longitudinal apertures through which pass the cables of defendant Telegraph Company's lines; the top of the conduit tile is three feet below the manhole caps which are at or near the surface of the street. (We observe that, if the difference in grade between the two manholes mentioned is more than three feet, the conduit at the manhole at Fifth and Wall is of higher elevation than the cap of the manhole near which the plaintiff fell.) The manholes are capped with iron or steel discs with two holes or vents and lie unsealed in a firmly fixed iron or steel ring at the surface of the street.

Plaintiff introduced evidence tending to show that for some days preceding January 15, 1946, the day plaintiff was injured, water had been standing in a triangular or V-shaped area south of the manhole situate on Fifth Street between Joplin and Main, the apex of the triangle being near the manhole and the base ''past the sidewalk line'' at and across the ''mouth'' of the alley. The ''water came out of the manhole.'' The water froze and thawed as the temperature varied below and above the freezing point. (The maximum temperature, January 15th, was 37° and the minimum 23° Fahrenheit.) A witness testified he had seen the water and ice in the area ''at least five days prior to this accident . . . to my knowledge (the manhole) had leaked water at least ten days before this accident . . . there was ice and slush in there during the day time; when it was warm there would be puddles of water. And towards evening when it got cold that water would freeze and there would be a freezing condition in that at least five days before that time.'' The ice varied in thickness ''from one inch to about two and a half inches.''

Plaintiff, a pedestrian, walked westwardly from Main on the sidewalk along the south side of Fifth Street, stepped from the sidewalk onto the ice in the alley, slipped and fell, and was injured. This occurred at 5:15 or 5:30 o'clock in the afternoon of January 15th.

Evidence was introduced by defendants tending to show that the next morning, January 16th, water was seen coming out of the manhole on Fifth Street between Joplin and Main. The water spread out as it flowed southwardly down the incline from the manhole to the gutter and the mouth of the alley. When the water in the manhole was pumped out (by employees of Joplin Water Works Company) water was observed ''bubbling out'' from the bottom of the conduit on the west side of the manhole. It was later discovered water was also accumulating in the manhole at the intersection of Fifth and Wall Streets; ''the water was up over the duct . . . where the cable is.'' When the water was pumped out of that manhole water was yet seen seeping through on all sides of the manhole walls. The manhole is located about 25 feet from a fire hydrant set near the southeast corner of the intersection of Fifth and Wall

Streets. Employees of Water Works Company testified they finally discovered water was being discharged from the safety drain of the fire hydrant. There was testimony that the fire hydrant had not been "turned off tight" after having been opened, perhaps by some employee of the City or of Water Works Company. (The water supply of Joplin is furnished by Joplin Water Works Company which owns and controls the water mains and the fire hydrants. The fire hydrants were occasionally flushed when inspected by Water Works Company. And water from the hydrant at Fifth and Wall was frequently used by the City's street employees to flush the streets in nonfreezing weather.) Water from the water mains had come into the "barrel" of the hydrant under pressure and was being forced out the safety drip valve at the base of the hydrant, which valve was opened when the hydrant had been but imperfectly turned off. When the hydrant was tightly shut off from the water main, water was no longer forced out of the safety drip valve; and water ceased seeping into the manhole at Fifth and Wall, and no longer spurted or "bubbled" from the conduit into the manhole near the alley where plaintiff was injured. Defendants' [485] evidence further tends to show there is nothing unusual for water to accumulate in manholes to conduits of telegraph lines. It is unusual for water to overflow manholes and flow onto the surface of the street; none of defendant Telegraph Company's manholes at Joplin had overflowed during the previous twenty-two or twenty-three years. Telegraph Company's lineman went into the manholes to make electrolysis tests as often as "a year and a half." The "practice is not to inspect the manholes until some break in the line is discovered."

■ (1) In deciding the question whether the trial court erred in sustaining defendant Telegraph Company's motion for a directed verdict, we will ignore the evidence introduced by defendants, except such of defendants' evidence as may aid plaintiff's case. In so doing we see there was no evidence introduced by plaintiff tending to show the original source of the water which admittedly accumulated in and overflowed the manhole, and there was no evidence introduced by plaintiff tending to show that defendant Telegraph Company's installations were defective. And plaintiff did not declare such defendant was negligent because of the mere discharge of water upon the surface of the street. Indeed plaintiff did not advance by pleading or proof any such theories of defendant Telegraph Company's liability. Plaintiff, as stated, charged defendant Telegraph Company, a permissive user of the street for a purpose other than travel, was negligent in permitting water and ice to accumulate upon the place where plaintiff fell; in permitting water to accumulate in the manhole and run off on the crosswalk when such defendant knew or should have known the water would freeze and become slippery and dangerous; and in failing to warn of the resultant dangerous condition, or to

remove the ice and water and restore the area to a reasonably safe condition.

It was not alleged defendant Telegraph Company in its use of the street had an installation such as a pump so negligently constructed adjacent to a sidewalk that water ran onto the walk as did the abutting property owner in the case of Hilliard v. Noe, Mo. App., 198 S. W. 435. Nor was it alleged or shown Telegraph Company maintained an installation in a defective condition as had the abutting property owner or occupier negligently maintained the cracked electric light pole in Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S. W. 2d 35. Nor was the water and ice on the alleyway because of any alleged negligently adjusted appliance as was the accumulated ice and water due to an improperly rolled awning in front of defendants' store in Stith v. J. J. Newberry Co., 336 Mo. 467, 79 S. W. 2d 447 (the court observed in the latter case the defendant manager *who had control* of the store and the awning could not escape liability merely because his negligence was nonfeasance). These three cases treat with the duties of abutting property owners to the traveling public. The general rule governing these cases are considered in State ex rel. Shell Petroleum Corp. v. Hostetter, 348 Mo. 841, 156 S. W. 2d 673, in which case this court observes the doctrine that the abutting property owner owes a duty to the public to exercise reasonable care to see that any installation by him, in making an extraordinary use of a sidewalk for his own convenience, is constructed and maintained in a reasonably safe condition for use by the public as a part of the sidewalk for traveling. The rule of these cases in imposing the duty to exercise reasonable care in constructing and maintaining such abutting property owners' extraordinary installations in a reasonably safe condition, however, is somewhat like the duty of defendant Telegraph Company, a permissive user of the street, to exercise reasonable care to so construct and maintain its installations and appliances that they will not unnecessarily interfere with or endanger the safety of the traveling public. Poumeroule v. Postal Tel. Cable Co., 167 Mo. App. 533, 152 S. W. 114 (unencased guy wires over sidewalk); Sinclair v. Columbia Tel. Co., Mo. App., 195 S. W. 558 (wire sagged down across a public road); 26 R. C. L., § 40, pp. 530-532; 25 Am. Jur., Highways, § 361, pp. 653-655; 62 C. J., Telegraphs and Telephones, § 64, pp. 60-61. See also Stanich v. Western Union Tel. Co., 348 Mo. [486] 188, 153 S. W. 2d 54 (temporary barricade in the street).

In the instant case, the evidence shows water from some source did collect in the conduit and manholes, which defendant Telegraph Company (or its predecessor) had installed in the street, and was discharged over the street and into the alley and was frozen at the place where and when plaintiff fell. The installations owned and controlled by Telegraph Company were the immediate source of the water,

792

It is here remarked that the open or unsealed tile conduit constructed for Telegraph Company's lines also served as a conduit for waters from whatever sources which might enter Telegraph Company's unsealed installations from Wall Street to and including the manhole near the alley where plaintiff was injured. It was not unusual for water to accumulate in Telegraph Company's manholes. And the evidence tended to show the water had accumulated in and flowed out of the installations for about ten days, and had for five days intermittently thawed and frozen in the fluctuating wintry temperature. In our opinion, it could have been reasonably found that defendant Telegraph Company in permitting discharge of the water from its installations in the circumstances, during such weather conditions, and upon such a busy street, and in failing to warn of the consequent icy condition or to cause the removal of the water and ice was negligent. It seems to us that a jury could reasonably have decided that the water had so flowed out of the manhole for such a period of time that defendant Telegraph Company should have known of the watery, icy condition. We bear in mind the negligence charged is not the discharge of the water, which discharge, in itself, might not be considered negligent; but the jury could have reasonably found it was negligent to permit the discharge at a time of freezing weather and to fail to remove the accumulated ice. It could be reasonably said, it should have been foreseen, in the circumstances, that the discharged water would freeze and render the area unsafe for traveling. In the case of Waltemeyer v. Kansas City, 71 Mo. App. 354, a defendant water company had opened its hydrants and permitted water to flow out upon a street of Kansas City in freezing weather. It perhaps was not actionable negligence to permit the water to flow out upon the street. The water did not injure plaintiff. But it was negligence to allow the dangerous accumulation of ice, and it was held the trial court erred in peremptorily instructing the jury to return a verdict for defendant water company. (It was further correctly said by the court that the negligence of the water company did not relieve the defendant Kansas City from its duty to keep its streets in a reasonably safe condition for travel.) We hold the trial court erred in sustaining defendant Telegraph Company's motion for a directed verdict. Oettel v. J. A. Schaefer Const. Co., Mo. App., 51 S. W. 2d 870; Waltemeyer v. Kansas City, supra; Crocker v. Schureman, 7 Mo. App. 358; and see also authorities cited at the conclusion of the preceding paragraph.

█ Now, as stated, it is assigned (2) by plaintiff-appellant that the trial court erred in permitting defendants-respondents to introduce evidence tending to show the origin of the water which accumulated in and was discharged from defendant Telegraph Company's manhole. We cannot follow plaintiff's argument that, since defendants had not set forth affirmatively that the water was discharged out

of the manhole because of the act of some stranger to the action, defendants were obliged to accept plaintiff's theory of her case and thus be deprived of demonstrating, if they could, that plaintiff's injuries were not proximately due to defendant Telegraph Company's negligence. As we have said, we believe plaintiff made out a submissible case against defendant Telegraph Company, but the questions whether the Telegraph Company was negligent in the circumstances and whether such negligence was a proximate cause of plaintiff's injury *were for the jury.* Although defendant Telegraph Company raised but the general issues they were nevertheless entitled, without special pleading, to show, if they could, that some other's act or omission caused an unusual, extraordinary and unprecedented condition in defendant Telegraph Company's installations, and that [487] such defendant's failure, in the circumstances, to foresee and take precautions against, or discover and alleviate the dangerous condition was not negligence; or, if negligence, to show, if they could, that the negligence was not such for which the defendant Telegraph Company should, in the circumstances, be held responsible. Hornsby v. Fisher, Mo. Sup., 85 S. W. 2d 589; Kaminski v. Tudor Iron Works, 167 Mo. 462, 67 S. W. 221; Connole v. Illinois Cent. R. Co., Mo. App., 21 S. W. 2d 907.

■ (3) Instruction Number 1, given at the instance of defendant City is as follows,

"The Court instructs the jury that the law does not make the City an insurer of the safety of the sidewalks and the streets, that is the City is not responsible for every trivial defect that may exist in the streets or sidewalks and the City is not responsible for every accident that happens or occurs to pedestrians upon the streets or sidewalks."

We do not regard the giving of this instruction, when considered in connection with other instructions given, as prejudicial error. Plaintiff does not contend the instruction does not correctly state the law. See Luettecke v. City of St. Louis, 346 Mo. 168, 140 S. W. 2d 45; and Taylor v. Kansas City, 342 Mo. 109, 112 S. W. 2d 562. Although the instruction is in abstract form, it does not direct a finding for defendant City, as did the abstract instructions direct findings for defendants in the cases of Gillioz v. State Highway Commission, 348 Mo. 211, 153 S. W. 2d 18; and Stanich v. Western Union Tel. Co., supra, cited by plaintiff. And the trial court in other instructions given at the request of plaintiff and defendant City hypothecated the facts and advised of the applicable law. See State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S. W. 2d 667; and Vol. 1, Raymond, Missouri Instructions to Juries, § 67, at pages 56-57.

■ We are, moreover, of the opinion that the Instruction Number 9 given at the instance of defendant City was not prejudicially erroneous. The instruction is as follows,

"The Court instructs the jury that the only acts of negligence with which the defendant City of Joplin is charged is failure to exercise ordinary care to maintain the said crosswalk in a reasonably safe condition and by failing to remove or warn against the alleged icy or water condition on said crosswalk after the City of Joplin knew or by the exercise of ordinary care could have known of said condition. *The Court instructs the jury that you are not to impute or imply to the defendant City of Joplin in any degree any responsibility or liability, if any, for water, if any, which was allowed to be collected and accumulated in the manhole belonging to the defendant Western Union Telegraph Company or any other person.* You are instructed that only if you find and believe from the evidence that defendant City of Joplin failed to exercise ordinary care to maintain the said crosswalk in a reasonably safe condition or failed to exercise ordinary care to remove or warn against the said alleged icy and watery condition on said crosswalk after the City of Joplin knew or by the exercise of ordinary care on its part could have known of said condition, and that such failure on the part of the City of Joplin was the proximate cause of the plaintiff's alleged injury, that you may resolve the issues in favor of the plaintiff and against the City of Joplin." (Our italics.)

Plaintiff-appellant argues that, since the trial court directed a verdict for defendant Telegraph Company, the jury could easily have been misled by the Instruction No. 9 into believing the trial court "was telling them in so many words . . . that they must find their verdict in favor of the City as neither could the City be held liable or responsible for the water or ice on the street if it came from Western Union's manhole." It was virtually admitted the source of the water which became frozen at the place where plaintiff fell was water which had collected and accumulated in the manhole "belonging to the defendant Western Union Telegraph Company." It was not charged that defendant City was responsible for the accumulation of the water in the manhole (nor for the water's discharge during the freezing weather). The trial judge was evidently of the opinion the jury might consider [488] the City had a duty relating to the defendant Telegraph Company's installations, and was responsible for the accumulation of the water. It was not error, in our view, for the trial court to advise the jury of the purview of defendant City's duty, the failure to perform which duty was charged by plaintiff, that is, defendant City's duty to exercise reasonable or ordinary care to remove the water and ice and restore the crosswalk to a reasonably safe condition, or to warn the traveling public of the danger. The duty of defendant City obtained regardless of the source of the water; but the defendant City's failure to perform its duty was actionable only when it, in the exercise of reasonable or ordinary care, knew or should have known of the discharge of the water and

the icy condition in the intermittently freezing weather. When the instruction is carefully read it is not reasonably susceptible of the construction that the defendant City was not liable for the alleged icy and watery condition on the crosswalk where plaintiff fell, whatever the source of the water, if defendant City knew or by the exercise of ordinary care could have known of the condition. Another instruction (Number 1, given at plaintiff's instance) advised the jury,

". . . If you find and believe from the evidence that at the time and place plaintiff alleges she was injured, said crosswalk was covered with ice and water, and that by reason thereof said crosswalk was unsafe or dangerous for pedestrians traveling over the same, and

"If you find and believe from the evidence that such condition had existed for such a length of time before plaintiff's injury that the officers of the City of Joplin in charge of its streets could by the exercise of reasonable or ordinary diligence have discovered the condition of such crosswalk and had a reasonable time thereafter, by the exercise of ordinary care, to correct such condition before plaintiff fell thereon, if she did fall, and that said defendant City of Joplin negligently failed so to do, and that as a direct result of said negligent failure of the defendant City of Joplin, if any, the ice and water on said crosswalk, if any, caused the said crosswalk to be in a condition that was not reasonably safe for the plaintiff to use while exercising such care for her own safety as would be ordinarily exercised by a reasonably prudent person under the same or similar circumstances; and . . . then it will be your duty to find the issues in favor of the plaintiff and against the defendant City of Joplin.".

When the instructions given by the trial court are read together, we believe the jury surely was not misled by defendant City's Instruction No. 9 into believing they should find a verdict in favor of defendant City because of the fact the water, which was frozen where plaintiff fell, came from defendant Telegraph Company's facilities. Instructions are to be taken together; and when all the instructions read together harmonize and correctly state the law, the language only apparently misleading when reading a single instruction is cured. McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S. W. 2d 37, and cases therein cited; Bolino v. Illinois Terminal R. Co., 355 Mo. 1236, 200 S. W. 2d 352.

The judgment for defendant City should be affirmed; and the judgment for defendant Telegraph Company should be reversed, and the cause remanded.

It is so ordered. *Bradley* and *Dalton, CC.*, concur.

· PER CURIAM:—The foregoing opinion by VAN OSDOL, C;, is adopted as the opinion of the court. All the judges concur.