PLESS COUNTS, Respondent, v. GUY A. THOMPSON, Trustee, MISSOURI
PACIFIC RAILROAD COMPANY, a Corporation, Appellant, No. 40944
—222 S. W. (2d) 487.

Division One, July 11, 1949.

*Thomas J. Cole, Oliver L. Salter, Ragland, Otto, Potter & Embry* and *Leon P. Embry* for appellant.

488

490

*Charles P. Noell, John H. Haley, Jr.,* and *Frank Mattes* for respondent.

492

494

HYDE, J.—This is an action for damages for personal injuries under the Federal Employers' Liability Act. (45 U.S.C.A. 51 et seq.) Plaintiff had verdict for $165,000.00, which was reduced by remittitur (in the trial court) to $140,000.00. Defendant has appealed from the judgment entered for that amount.

Defendant alleges error in instructions, improper argument, exclusion of evidence and excessive verdict. Plaintiff (a brakeman) lost both legs when defendant's engine and tender (on which plaintiff was riding) backed into standing cars during a night switching movement, at a speed of 25 miles per hour according to plaintiff's evidence, or at 10 to 15 miles per hour according to defendant's engineer. Anyhow, the force of collision was sufficient to derail three of the cars. Plaintiff was riding on the rear of the tender for the purpose of giving the signals for coupling the standing cars.

Plaintiff submitted two charges of negligence, namely, backing over a burning fusee (placed to indicate the position of the standing cars) without slackening speed; and failure to reduce speed upon signal from plaintiff. Both the engineer and plaintiff had thrown out fusees, one of which went out, and this may have confused the engineer as to the location of the cars. The charges of negligence were hypothesized in plaintiff's two main instructions, as follows:

"I. The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence it was the duty of defendant's engineer operating the locomotive and tender mentioned in evidence and upon which plaintiff was riding to stop said locomotive and tender upon reaching a burning fusee on the railroad track on which said locomotive and tender were being operated and to proceed only after such fusee had been extinguished and then at such a rate of speed as to be able to stop short of any obstruction that might be on such railroad track and that as defendant's said engineer was operating such locomotive and tender in a westerly direction along the railroad track and at the time and place mentioned in evidence there was a fusee burning on the railroad track on which such locomotive and tender were being operated and that such fusee was visible to said engineer for a sufficient length of time and distance to have permitted said engineer to stop said locomotive and tender before they reached such fusee and that defendant's said engineer failed to stop locomotive and tender before reaching said fusee and that defendant's said engineer operated said locomotive and tender over and past such burning fusee and at such a rate of speed that said locomotive and tender could not thereafter be stopped short of an obstruction on said railroad track, then you may find the defendant guilty of negligence."

"II. The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence it was the duty of defendant's engineer operating the locomotive and tender mentioned in evidence and upon which plaintiff was riding to reduce the speed of said locomotive and tender upon a signal by plaintiff to do so and that as defendant's said engineer was operating such locomotive and tender in a westerly direction along the railroad track and at the time and place mentioned in evidence, plaintiff signalled to defendant's said engineer to reduce the speed of said locomotive and tender and that defendant's said engineer saw, or by the exercise of ordinary care could have seen, plaintiff's said signal in time thereafter by the exercise of ordinary care to have reduced the speed of said locomotive and tender before colliding with a railroad car then standing on the railroad track on which said locomotive and tender were being operated and that defendant's said engineer failed to reduce the speed of said locomotive and tender, then you may find the defendant guilty of negligence."

· Each of these instructions, after authorizing a finding of negligence as above set out, concluded as follows: "And if you further find and believe from the evidence that as a direct result thereof said locomotive and tender collided with a railroad car then standing on the railroad track on which said locomotive and tender were being operated, and that as a direct result thereof plaintiff was injured, then your verdict should be for the plaintiff and against the defendant." Plaintiff had sufficient evidence to support a finding of the above hypothesized facts. Defendant's rules 11 and 11a prohibited moving over a burning fusee and required stopping, extinguishing the fusee, and proceeding at restricted speed. Instruction I, although not mentioning these rules, is obviously based on them.

Defendant contends that these instructions erroneously failed to require a finding that the hypothesized acts constituted negligence but treated these acts as negligence per se, improperly commented on the evidence, and usurped the function of the jury. Defendant also contends that the rules, which were the basis of Instruction I, were for the protection of its equipment and not for plaintiff's protection, and that both instructions "left the jury free to speculate concerning the facts necessary to impose the therein hypothesized 'duty' and as to the extent thereof; and also erroneously failed to require a finding that the hypothesized 'duty', if found, was a duty owing to respondent." On the first point, defendant cites Yerger v. Smith, 338 Mo. 140, 153, 89 S. W. (2d) 66, 74 as follows: "Whether or not negligence can be inferred from a given state of facts is a question of law for the court, and whether or not negligence ought to be inferred from the given state of facts, if the court holds it can be, is a question for the jury." However, we think the facts hypothesized were sufficient to authorize a finding of negligence and, by using the term "may find the defendant guilty of negligence," they do not require but only authorize such a finding. These instructions would be clearer if between that clause and the last clause, commencing "and if you further find and believe from the evidence as a direct result thereof, etc.," a requirement had been made to the following effect: "and if you find that defendant was guilty of negligence." Nevertheless, we think this requirement was supplied and the meaning of the submission made clear by Instruction V which told the jury "that the burden of proof is on the plaintiff to prove to your satisfaction, by the preponderance or greater weight of the credible evidence that the defendant was guilty of negligence as submitted to you in the Court's instructions . . . and, unless you believe and find from the evidence in the case that plaintiff has proven by a preponderance of the credible evidence that the defendant was guilty of negligence as defined and submitted to you in the instructions of the Court, . . . your verdict must be for the defendant." As we said, in McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S. W. (2d) 37:

"If the plaintiff's instruction, covering the whole case and authorizing a verdict, does require the finding of all essential elements of the plaintiff's case, but states some of these indefinitely or ambiguously ▆▆▆▆ or in language which might be misleading, then an instruction on the part of the defendants which clearly and specifically requires the finding of essential elements does not conflict with the plaintiff's instruction, but instead makes it clear and definite. When all of the instructions thus harmonize and when read together correctly state the law, any such indefinite, ambiguous or misleading language in the plaintiff's instruction is cured by the other instruction." [See also Griffith v. Gardner, 358 Mo. 859, 217 S. W. (2d) 519; Hines v. Western Union Telegraph Co., 358 Mo. 782, 217 S. W. (2d) 482.]

▆▆ We also think that the facts submitted were sufficient to show a duty on the part of defendant's engineer to plaintiff, because the admitted facts were that plaintiff was defendant's employee engaged in the switching movement, as a brakeman, under the direction of the engineer. Plaintiff was responsible for informing the engineer by signals how to proceed and the engineer undoubtedly owed him a duty of exercising reasonable care to observe and act on his signals. A duty which is the basis of tort liability, "arises from the relations in which the parties placed, toward each other, by the circumstances of the case." [Lowery v. Kansas City, 337 Mo. 47, 85 S. W. (2d) 104.] We further think it would be unreasonable to say that the defendant's rules as to observing fusees and operating in a prescribed manner where they were found were only for the protection of its equipment. Surely there is more reason to have such safety rules for protection of employees, on the basis of efficiency, financial and humanitarian considerations which are apparent from the facts in evidence. We, therefore, hold that there was no prejudicial error in giving Instructions I and II.

▆▆ Defendant also contends that Instruction VII was erroneous. Defendant claimed that plaintiff was guilty of contributory negligence in failing to put a light on the end of the standing cars as required by one of its rules (which plaintiff contended did not apply) and in riding on the end sill of the tender (which plaintiff denied) in violation of another rule. Instruction VI told the jury if they found plaintiff's injury was caused in part by his own negligence they should deduct from the total damages sustained by him, the proportion which his negligence bore to the negligence of both. Instruction VII told them that the burden of proof as to plaintiff's negligence was on defendant and must be established "by the preponderance or greater weight of the credible evidence." It then contained the following definition of these terms which defendant says was erroneous: "By 'preponderance' or 'greater weight of the credible evidence', as those terms are here used, means *evidence which convinces you it is more worthy of belief than that offered by plain-*

*tiff;* and if, therefore, you find the evidence touching such claim does not preponderate in favor of the defendant; that is, the evidence favorable to defendant is not more convincing or is not more worthy of belief than that favorable to plaintiff, then you shall not diminish plaintiff's damages, if any, by reason of such claim by defendant.''

Defendant says that the italicised portion of this definition excluded from consideration evidence offered by plaintiff which tended to show his negligence; and that the word "convinces" imposed the burden of proving contributory negligence beyond a reasonable doubt. This clause by itself might be susceptible of this criticism. (It would be better to say "evidence which you find more worthy of belief than that which tends to contradict it.") However, this is fully explained by the remainder of the sentence so clearly that we do not think the meaning of the whole could be misunderstood. We, therefore, hold that there was no prejudicial error in giving Instruction VII.

Defendant also contends that it was error to give Instruction XI. This was plaintiff's main instruction on the elements to be considered in determining damages. Defendant says this instruction excluded the idea of diminution of damages on account of contributory negligence and was in conflict with instructions IV and VI authorizing such diminution. Defendant also says that it submitted future ▆▆▆▆ hospital and medical services which were neither pleaded nor proved. This Court held in McIntyre v. St. Louis & S. F. R. Co., 286 Mo. 234, 260, 227 S. W. 1047, 1055, that the failure of the main instruction to mention such diminution of damages on account of contributory negligence, was cured by other instructions specifically so stating. Defendant argues that this decision is unsound. However, we think it should be followed where as here plaintiff's instruction authorizing full damages was qualified by the requirement, "if you find the issues in favor of the plaintiff under the evidence and other instructions given you." This clearly required a finding for plaintiff on the issue of contributory negligence before this instruction could be applicable. As to future hospital and medical services we find there was evidence brought out on defendant's cross-examination that plaintiff needed an operation to remove and prevent bony spurs on the ends of the stumps of his legs, for which the surgeon's fee would be $250.00. We hold that there was no prejudicial error in giving Instruction XI.

Defendant also contends the Court erred in refusing to permit defendant to show by witness Ikemeyer what his experience was with artificial limbs. The trial court excluded this on the ground that it would "be entirely collateral and would have no bearing on what the plaintiff in this case can or cannot do with artificial limbs." Ikemeyer's legs were amputated when he was seven years old. There was also evidence that bony spurs on the stumps of plaintiff's legs

interfered with the use of artificial limbs and that he had other injuries (fractured vertebra and injury to nerves of his neck and shoulder) which weakened his arms and back so as to impair his ability to use artificial limbs. The Court's view was that expert testimony as to the utility of artificial limbs would be proper by a medical man or by one who dealt with fitting, manipulation and handling of them but that the experience of a particular individual whose condition and circumstances were very different was an immaterial collateral issue. Defendant contends that some of plaintiff's medical testimony gave the impression that no man with both legs off above the knees could walk with artificial limbs and that Ikemeyer's testimony as to his own experience was relevant and material to contradict it. However, we do not find that plaintiff's experts actually made such a contention but meant instead to emphasize the need of additional support such as canes or crutches and the necessity for strong arms, shoulders and back, as well as a long period of training, to use them successfully. We think the admission or exclusion of such evidence as this, under the circumstances of this case, was a matter which rested largely in the sound discretion of the trial court; and unless there was an abuse of discretion on the part of the trial court, its action will not be the basis for a reversal on appeal. [See Green v. Terminal R. Assn., (Mo. App.) 135 S. W. (2d) 652; Lake Superior Loader Co. v. Huttig Lead & Zinc Co., 305 Mo. 130, 264 S. W. 396 and authorities cited; 32 C. J. S. 433-453, §§ 579-597; 20 Am. Jur. 278-287, §§ 302-308.] We do not find an abuse of discretion as to this matter in this case and hold that there was no prejudicial error in the Court's action.

 Defendant also contends that the Court erred in refusing to discharge the jury because of the following statements made by plaintiff's counsel in his closing argument, as follows: "Another thing I want to tell you: don't let some jurors come out and tell me, 'Mr. Noell, we thought we would give him a little bit less because the Company would pay it; wouldn't take any appeal.' I assure you I'll say, 'You are all wrong.' . . . Anyhow, you leave us worry about collecting the judgment." The Court sustained the objections of defendant's counsel that these statements were improper and then instructed the jury to disregard them. Defendant's counsel made no further objection or request at that time, but after the jury had left and had been deliberating for about a half-hour, he asked that they be discharged. While this argument was improper, the Court promptly and emphatically did everything requested at the time. We think this action was reasonable and hold that there was no prejudicial error in this matter.

 Defendant also claims error in the refusal to discharge the jury on account of an inquiry addressed to the Court by the jury, as follows: "What is the maximum fee or percentage basis allowed by

Missouri law to plaintiff's counsel?" Defendant also says that the court erred in orally instructing the jury in answer to this inquiry and says the oral instructions given them prejudicially emphasized that there was no maximum for attorney fees and indicated to the jury that the Court assumed plaintiff was entitled to and would get a verdict.

When this request was brought in the Court asked defendant's counsel what he wanted him 'to do' and he asked that they be discharged. However, when the Court indicated that would not be done, plaintiff's counsel said: "You should say to them that the attorney's fees is handled in an entirely separate matter; that you are to consider only the things that this Federal Employers' Liability Act provides, only the things that are referred to in that instruction and nothing else, that's the law, and even then it won't be safe to send them back, unless you should tell them they should add nothing to their verdict for attorney's fees, not a penny. . . . I think you have to go further and say, 'You shall not return anything for attorney's fees.'" The Court called the jury in, read their request and stated to them: "Members of the Jury, there is no such law. That is a matter of contract between plaintiff's counsel and plaintiff. However, you are not to consider that in determining the amount of damages in this case. I again refer you to Instructions Nos. XI and VI on the question of damages in this case. Bearing that in mind, you will retire to your jury room, gentlemen." Defendant's counsel renewed his request to discharge the jury and objected to the statement made to them as error because it did not mention Instruction IV and because "under the Judge's oral instruction they can do nothing but return a verdict for the plaintiff. They can no longer return a verdict for the defendant."

We do not think it was improper for the judge to orally answer this inquiry of the jury. It does not seem to have been considered by defendant's counsel at the time that he should answer it any other way. In answer to the judge's inquiry as to what he should do, he did not suggest further written instructions. The jury obviously needed further information and it was the duty of the judge to furnish it. Certainly our system of written instructions does not go so far as to require a trial judge to stand mute before the jury when they make such a request for information. [Brunk v. Hamilton Brown Shoe Co., 334 Mo. 517, 66 S. W. (2d) 903, l. c. 908.; Hoeffner v. Western Leather Clothing Co., (Mo. App.) 161 S. W. (2d) 722; l. c. 731; Meyer v. Dubinsky Realty Co., (Mo. App.) 133 S. W. (2d) 1106; Conway v. Kansas City Public Service Co., 234 Mo. App. 596, 125 S. W. (2d) 935.] There was nothing incorrect in what the judge said to the jury, and if defendant considered that more specific directions were necessary, it should have offered an additional instruction. [See Schonwald v. F. Burkart Mfg. Co., 356 Mo. 435, 202 S. W.

502

(2d) 7, l. c. 17.] We also agree that it was not necessary to discharge the jury because they asked the question. [See McComb v. Vaughn, 358 Mo. 951, 218 S. W. (2d) 548.] They should have done so when they were thus in doubt and did not know whether or not this was a matter they could properly consider. The Court did tell them that they were not to consider attorney's fees in determining the amount of damages and we cannot assume that they deliberately violated his admonition. Defendant relies on Fitzsimmons v. Commerce Trust Co., (Mo. App.) 200 S. W. 437, but it does not appear from that opinion what the judge said or what objections were made. Defendant also cites Boyd v. Pennewell, (Mo. App.) 78 S. W. (2d) 456 and Hartgrove v. Chicago, B. & Q. R. Co., 358 Mo. 971, 218 S. W. (2d) 557, but in these cases the judge gave information to the foreman of the jury only out of the presence of counsel.

As to the claim that the Court assumed that plaintiff would get a verdict, it should be noted that Instruction XII, ▆▆ eliminating taxes as an element of damages, closed thus: "should you find for the plaintiff you should only consider the elements mentioned by the court in the other instructions in the case." We think what the Court said, in answer to the jury's request for information, had the same meaning. We hold that there was no prejudicial error in this matter.

▆▆ As to the contention of excessive verdict, plaintiff claims that we have no jurisdiction to determine the matter of to what extent the verdict is excessive and that to do so would deprive plaintiff of the right of trial by jury and deprive him of property without due process of law. Plaintiff also contends that the question of whether the damages are excessive must be decided in accordance with the decisions of the Federal Courts; that our rule of uniformity of maximum damages should be abandoned; and that the damages awarded are not excessive in fact. Originally attorneys for injured plaintiffs sought to have a remittitur practice established so that a judgment for a proper amount could be affirmed and the expense and delay of a new trial avoided. [See Burdict v. The Missouri Pacific R. Co., 123 Mo. 221, l. c. 238, 27 S. W. 453.] It is now well established throughout the country that affirmance on remittitur may be ordered without the consent of the defendant. [3 Am. Jur. 687, §§ 1177-1179; 5 C. J. S. 1345, § 1859.] The history of the development of this practice in Missouri is discussed in Cook v. Globe Publishing Co., 227 Mo. 471, l. c. 546, 127 S. W. 332. The principle upon which this practice is based, as shown by these authorities, is that, when there is no substantial evidence to support a verdict for more than a certain maximum amount, the result may be due to error or mistake of the jury and not passion or prejudice. When that is the situation, the Court, in determining the maximum amount authorized by the evidence, does not award or fix the damages but only says that

if the jury had given such maximum amount then its verdict could have properly been permitted to stand. It is, therefore, proper to permit the plaintiff to elect between accepting a judgment for such amount, by remitting the excess, or having a new trial. [See Kennon v. Gilmer, 131 U. S. 22, 9 S. Ct. 696; 33 L. Ed. 110.]

This remittitur practice has long been established as a matter of procedure in our courts. [See Smiley v. St. Louis-S. F. R. Co., No. 40988, 359 Mo. 474, 222 S. W. (2d) 481, decided concurrently herewith.] The Federal Employers' Liability Act only authorizes actions to be brought in our courts and does not regulate their rules of practice and procedure. In this case, plaintiff did not obtain a unanimous verdict which would have been required had he brought his action in the United States District Court, but the defendant is not entitled to a new trial on that ground. The question raised "is a procedural one governed by the law of the forum." [Joice v. M-K-T R. Co., 354 Mo. 439, 189 S. W. (2d) 568.] Our conclusion is that an action under the Federal Employers' Liability Act in our courts is subject to the same rules of practice and procedure as any other action, including our remittitur practice.

█ We think the verdict was excessive even after remittitur of $25,000.00. Plaintiff was 36 years old at the time of the trial. He was working on the "extra board" which meant that he had work when it was available but, except for one month, it had been available during his employment. He estimated his earnings from $300.00 to $350.00 per month but defendant's pay roll records showed the average during his period of employment to be $228.00 per month. Plaintiff had evidence that a brakeman eligible for work at all times could make about $400.00 per month and perhaps $40.00 to $50.00 per month more after November 1, 1947 because of a raise in pay.

Both of plaintiff's legs were amputated above the knees, removing the lower third of the thigh bones. There were bony spurs on the stumps of his legs which would interfere with the use of artificial limbs and which would require an operation to remove. He has pains and █ swelling in his legs. He also had pains in his hip, back, neck and head and right shoulder. The use of his right arm was impaired so that he had only about one-third of the normal movement from the shoulder. He had a compression fracture of the sixth cervical vertebra and damage to the cartilaginous disc between the sixth and seventh vertebra which affected the nerves in his neck and right shoulder. He also had a sprain of the right hip and in the lumbar region of the back. Defendant's evidence tended to show that plaintiff's injuries, other than the loss of his legs, are not very serious but we must consider only the evidence favorable to plaintiff on this issue. This evidence indicates that plaintiff's arms, shoulders and back have been permanently weakened so that he could not use artificial limbs. He has had an attendant at ten dollars per day from two

or three days to a week at a time and could get around only in a wheel chair. It was also shown that plaintiff was below average in mental ability so that it would not be possible to train him for such an occupation as a clerk or bookkeeper.

We do not find that a judgment for personal injuries has ever been permitted to stand in this state for more than $50,000.00. [Joice v. M-K-T. R. Co., 354 Mo. 439, 189 S. W. (2d) 568; Span v. Jackson-Walker Coal & Mining Co., 322 Mo. 158, 16 S. W. (2d) 190.] The injuries in this case are comparable with those in Aly v. Terminal R. Assn. of St. Louis, 342 Mo. 1116, 119.S. W. (2d) 363 in which a verdict for $85,000.00 was reduced to $40,000.00. Plaintiff cites cases from other states such as Avance v. Thompson, 320 Ill. App. 406, 51 N. E. (2d) 334 ($100,000.00 affirmed, but later reversed on other grounds, 387 Ill. 77, 55 N. E. (2d) 57) and Bartlebaugh v. Pennsylvania R. Co., 150 Ohio St. 387, 78 N. E. (2d) 410, 82 N. E. (2d) 853 ($150,000.00 affirmed); and also cases in United States District Courts such as Mc-Kinney v. Pittsburgh & L. E. R. Co., 57 Fed. Supp. 813 ($100,000.00), Delaney v. New York Central R. Co., 68 Fed. Supp. 70 and Af-folder v. N. Y. C. & St. L. R. Co., 79 Fed. Supp. 365 ($80,000.00). Of course, as we have said, no normal person would voluntarily be afflicted with such injuries as plaintiff has received for any amount of money; but that cannot be the measure of damages in a court of law. [Morris v. E. I. DuPont de Nemours & Co., 346 Mo. 126, 132, 139 S. W. (2d) 984, 988.] If it were, then in many cases all of a defendant's assets would have to be transferred to a plaintiff so seriously and permanently injured; but that would not be a just or workable rule in negligence cases. However, we do think that because of the difference in costs, wage scales and money value, a higher level of maximum damages is now warranted; and this has been recognized in our recent decisions in cases involving less serious injuries. [See Liles v. Associated Transports, 359 Mo. 87, 220 S. W. (2d) 36; Hill v. Terminal R. Assn., 358 Mo. 597, 216 S. W. (2d) 487.] Nevertheless, we think this verdict is still excessive by $60,000.00.

If plaintiff will remit $60,000.00 within fifteen days, the judgment will be affirmed as of the date of its rendition for $80,000.00; otherwise the judgment will be reversed and the cause remanded for a new trial. All concur.