BERNARD A. CONWAY, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE COMPANY, A CORPORATION, AND CLINTON WALTER SPARKS, APPELLANTS.—125 S. W. (2d) 935.

Kansas City Court of Appeals.   December 5, 1938.

*Charles L. Carr* and *Hogsett, Murray, Trippe & Depping* for appellant, Kansas City Public Service Company.

*Hogsett, Murray, Trippe & Depping* for appellant Clinton Walter Sparks.

*Jerome Walsh* and *Roy W. Rucker* for respondent.

CAMPBELL, C.—Action for damages for assault and battery.

The trial was with a jury. The verdict and judgment were for the plaintiff in the sum of $2200. Defendants have appealed.

The petition upon which the cause was tried stated facts sufficient to charge that defendant, Sparks, on September 9, 1935, was an employee of his codefendant and as such employee had the management and control of the rolling stock of his employer; that on that day he, in the course of his employment, beat, struck and injured plaintiff; that after the defendant, Kansas City Public Service Company, knew of the unlawful assault it retained Sparks in its employ and employed counsel to defend him "upon the charge growing out of and arising from the assault of the plaintiff herein, and filed against him in the Municipal Court of the city of Kansas City . . .;" employed counsel to represent Sparks on appeal from said municipal court and to represent him in "this cause."

Sparks was plaintiff's witness. He testified that he was the division superintendent, motor coach division, of his codefendant, hereinafter called company, and was such superintendent on the day of the alleged assault; that about 6:20 P. M. on September 9, 1935, while on his way home, riding in one of the street cars of the company, he saw plaintiff's automobile in which plaintiff was sitting, standing on the street car track ahead of the street car; that the street car was moved to within a few feet of the automobile and stopped; thereupon he alighted from the street car, went to near its front "to see what the trouble was. I thought if there was anything I could do to assist to get the car to moving I would help out;" that he asked plaintiff to "please move off the track."

"Q. It is generally the business of all of the employees in the operating division if they encounter a tie-up to try to aid and assist the motorman and operator in getting it unraveled? A. I don't know that it would be the duty but I think it would be a poor man that wouldn't try to do something to help his company out.

"Q. At least, it is the custom of the employees to do that? A. I think most of the men would do it.

"Q. It is generally done by most of the employees of the company? A. That is my supposition. I think so.

"Q. You appeared in the Municipal Court of Kansas City, did you not, on October 10th, 1935, and testified there? A. I don't remember the date, but I was there.

"Q. You appeared, at any rate, whatever the date was? A. Yes.

"Q. And you testified there? A. I did.

"Q. Under oath? A. I did.

"Q. I will get you to state whether or not in connection with your testimony the following question and answer was asked and given by you:

" 'Q. And you generally are concerned with seeing that the street cars are operated accurately, are you not? A. If I see a tie-up, I try to help them out.' Did you give that answer to that question at the Municipal Court on the occasion in question? A. I would; yes.

"Q. That question was asked and you gave that answer, A. Yes.

"Q. Now, I will get you to state, Mr. Sparks, after you got off the street car I will get you to state whether or not you were standing in front of the street car as soon as you alighted and on the right side of Mr. Conway's automobile in place of being back of the step from which point you say you addressed him? A. I was to the right of the street car. . . .

"Q. Now I will get you to state whether or not the following question was asked you and if you gave the following answer:

" 'Q. On his right side? A. On the right side.'

"Q. Of his car? A. Yes, sir. And I asked him to move his car off the track, and he says, 'What have you got to do with it?' I says, 'Go ahead, move your car off the track.' And he says, 'Why you big son-of-a-bitch, it is none of your business.' And when he said that, he put it in low gear and went on about eight or ten feet, and he cursed me two or three times through the window as he moved off. As he moved off, the operator, not knowing I was going south, he pulled out and I had to wait for the next car. So I thought I would go and explain to him I was with the company—and I didn't like him calling me a son-of-a-bitch—so when I walked up to the side of the door, he said he would whip me too, and he started to open the door, and I slammed the door—I think I caught his leg or foot when I slammed the door—and he hit at me, and started to get out again, and I slammed him down on the seat, and when I slammed him down on the seat, I hit him and he hit at me—I was standing in the street, and he was in the automobile—I knew I was in a bad fix if I got in a scrape there.' Did you make that answer to that question on that occassion? A. I did."

Sparks further testified in effect that that the general solicitor of the company to whom he stated the facts concerning the difficulty, sent Mr. Kitchen, one of the attorneys of the company, to appear and defend him in the municipal court, and that Mr. Kitchen appeared for him on appeal in the circuit court; that Kitchen does not charge any

of the employees of the company for his services. ''The company has him to do that to kind of help the employees out.''

Concerning the practice and custom of employees of the company whether on duty or not to assist when difficulties were encountered in the movements of cars the general superintendent of transportation for the company testified that whether it is the custom or not, I couldn't absolutely say custom. I think it is always done. It is done in a great many instances. And there have been a great many instances where it has not been done.''

Plaintiff testified that at the time in question he was on his way home, driving his automobile; that he stopped his automobile on the street car track ahead of the street car referred to by Sparks because of a red street light in his way and because an automobile a few feet in front of him had stopped; that after he stopped on the street car track the street car was moved to within two feet of his automobile.

''Q. Did it cause you any anxiety? A. Yes, it did.

''Q. When he finally came to a stop a couple of feet from you was anything said by you? A. Yes. He (motorman) kept clanging the bell, and when he got within a couple of feet of me there was no way for me to move and he kept on clanging the bell and I stuck my head out the window and hollered 'What are you trying to do, you farmer—run over me'? . . .

''Q. Now, when you asked him if he was trying to run over somebody, did he make any response? A. He said 'You aren't smart enough to be a farmer.' I said 'Well, maybe not; you can come down and find out.'

''Q. Did the motorman come down? A. He did not.

''Q. Was that the extent of the conversation between you and the motorman? A. Yes.

''Q. Was the red light still on? A. Yes.

''Q About that time what, if anything, happened? A. The motorman opened the door and Mr. Sparks came down.

''Q. Mr. Sparks came down. Was the red light still on? A. Yes, he came down right away.

''Q. Was the red light still on when he got down there? A. Yes.

''Q. When he got off the street car what did he do? A. He came to my right door and put his hand in and put his hand on my shoulder and said 'Get the hell off the tracks.'

''Q. When he got off the street car did he come up in a leisurely way or did he move fast? A. He moved fast.

''Q. When he put his hand on you and said 'Get the hell off the tracks,' did he say that in a mild, pleasant tone of voice, or not? A. No, sir, he did not.

''Q. What were the tones of his voice? A. Very bully manner in which he said it.

''Q. Loud and surly? A. Yes.

"Q. Angry tone of voice? A. Yes, sir.

"Q. Now did he say more than once to you to get off the track, or words to that effect? A. Well, he kept saying 'Get the hell off this track.'

"Q. About that time what happened? A. About that time the light had changed and the car in front of me moved forward and I put my car in gear and moved forward. He said 'Do you want to fight?' When he said that I pulled up about ten feet and stopped.

"Q. Did you curse and abuse him up to that time? A. I did not.

"Q. Had he said anything more to you than what you just indicated—'What the hell are you doing on the tracts,' or 'Get the hell off the tract'—had there been any sons-of-bitches exchanged between you? A. No, sir..

"Q. He had not called you a son-of-a-bitch and you had not called him a son-of-a-bitch? A. No.

"Q. I believe you asked him what the hell business it was of his? A. Yes.

"Q. You pulled down ahead some ten or fifteen feet? A. Yes.

"Q. Did the street car stay there or move on? A. The street car moved on."

Plaintiff further testified that when he stopped after moving the automobile from the street car track, Sparks came to the door of the automobile, said, "do you want to fight:" that he replied, "what the hell is that of your business," Sparks responded "get the hell out of there," and thereupon Sparks struck plaintiff twice while the latter was in the automobile; plaintiff then got out of his automobile and the fight was continued until the combatants were seperated by officers.

Defendants' first point is that the court erred in overruling their motion to declare a mistrial and discharge the jury on account of statements made by plaintiff's counsel in his opening statement to the jury. Said counsel stated his version of the evidence to be offered by the plaintiff concerning the assault and battery and then told the jury that after the occurrence the combatants were booked at a police station; that at the hearing in the municipal court Sparks was represented by an attorney acting upon the direction of the general solicitor of the company; and that the hearing resulted in Sparks being fined $50, and in the discharge of plaintiff. The defendants objected to the statement on the grounds it was prejudicial and incompetent, moved to strike the statements and declare a mistrial. The objection and motions were overruled and exception saved. Said counsel then stated to the jury that after the trial in the municipal court the attorney for Sparks "prosecuted an appeal for him" to the circuit court; that said attorney represented Sparks on appeal; that such facts would be offered as tending to show that the actions of Sparks on the night in question were within the scope of his authority and in furtherance of the business of the company; that the company had knowledge of the

conduct of Sparks, "stayed squarely behind him, defended him to the limit, and supplied counsel to look after his legal interest."

It is not claimed the evidence showing the company furnished counsel for Sparks both in the police court and in the circuit court without costs to the latter, was not properly received. There was no objection to that part of the statement wherein counsel in effect said the company took an appeal "for him," Sparks, to the circuit court. To say that Sparks appealed to the circuit court or that an appeal was taken for him was merely another way of saying he was convicted in the police court. When the jury was told that the company took an appeal for Sparks it would understand Sparks was convicted else appeal for him could not have been prosecuted; and as it was proper to inform the jury concerning the actions of the company in defending Sparks in the police court, the prosecution of the appeal to the circuit court, the statement that Sparks was fined $50 in the police court, was not sufficient to warrant a holding that the trial judge abused his discretion in refusing to declare a mistrial. [Buck v. St. Louis Union Tr. Co., 267 Mo. 644, 185 S. W. 208; Dees v. Skrainka Construction Co., 320 Mo. 839, 8 S. W. (2d) 873.] There is nothing on the record indicating bad faith on the part of plaintiff's counsel. On the contrary the closing part of his statement shows his purpose in stating the action of the company in defending Sparks was a legitimate one. The trial judge evidently thought the statements did not unduly prejudice the defendants. For these reasons we will not sustain the defendants' contention on this point. We do not say the conviction of Sparks, if he were convicted in the police court or in the circuit court, was a proper matter to be shown in the trial of the case at bar. What we do say is, it was proper for plaintiff to state the facts concerning the action of the company in defending Sparks in any litigation arising out of the alleged assault and battery.

The company in claiming the court erred in refusing its requested instructions A and D in the nature of demurrers to the evidence, offered respectively at the close of plaintiff's evidence and at the close of all the evidence, says that Sparks asked plaintiff to move from the street car track, which plaintiff did; that the street car had gone on its way before the fight occurred and therefore the fight was not connected with any service Sparks was authorized to render or did render for the company; that at the time of the alleged assault and battery Sparks had finished his day's work, was on the way to his home and was not connected with the operation of the street cars of the company; that after the automobile was moved from the track and the street car had gone on its way the company had no further business with plaintiff; that the assault was made in order to gratify the private malice of Sparks.

The evidence shows the company defended Sparks in the court proceedings arising from and directly connected with the assault and

battery, retained him in its employ, conducted itself as though Sparks was acting for and on its behalf; did not explain or attempt to explain why it would defend Sparks in his attempt to gratify his private malice, nor do counsel take cognizance of these facts in presenting the case to us.

Plaintiff stopped his automobile on the track because of a traffic stop light and in the presence of another automobile directly in front of him. Sparks, who said the company furnished him a pass on its cars, alighted from the street car, went to the automobile for the purpose of causing the obstruction to be moved from the track to the end the street car could go on its way. In seeking to have the obstruction moved from the track Sparks was undoubtedly acting in furtherance of the business of the company; and from the evidence above referred to the jury could find Sparks in ordering plaintiff to move the automobile off the track was acting according to the custom and practice of the employees of the company in similar circumstances. The contention the fight was a private affair, occurred ofter the automobile had been moved from the track, cannot be sustained for the reason there was evidence to the effect that Sparks alighted from the street car, came to the automobile while it was on the street car track, put his hand on plaintiff's shoulder and in an angry tone of voice said, "Get the hell off the tracks." The jury could therefore find Sparks was then and there guilty of an assault and battery. [State ex rel. v. Hines et al., 128 S. W. 248.] That assault and battery entitled plaintiff to recover at least nominal damages, although he did not thereby sustain any actual injury to his person. [Lambert v. Judge & Dolph Drug Co., 141 S. W. 1095.]

The defendants present the case here upon the theory the only assaults and batteries were the ones committed after the automobile was moved from the track. This contention cannot be sustained for the reason that the evidence favorable to plaintiff shows that Sparks was guilty of assault and battery while the automobile was on the track a few feet ahead of the street car. Whether the former assaults and batteries were or were not a continuation of the latter assaults and battery is, in ruling the demurrers of no consequence.

Were we to say that Sparks in engaging in the affray after the street car had gone on its way was not acting for the company, still we could not as a matter of law say he was not acting for the company when he sought to cause the automobile to be moved from the track. In performing that service he was acting according to the custom of employees of the company in similar circumstances; and as there is no complaint concerning the amount of the verdict or judgment the question whether or not Sparks was acting within the scope of his employment when he engaged in the fight after the automobile had been moved 10 or 15 feet from the track is not material. On the facts stated herein we hold the case was one for the jury. [Simmons v. Kroger Gro-

cery & Baking Co. et al., 104 S. W. (2d) 357; State ex rel. v. Trimble et al., 328 Mo. 761, 41 S. W. (2d) 801; La Bella v. Southwestern Bell Telephone Co. et al., 24 S. W. (2d) 1072, and cases cited therein.]

Defendants requested instructions E, F, and G, were refused. Each of said instructions would have directed a verdict for the company. They were properly refused for the reasons stated in our discussion of instructions A and D.

Plaintiff's instruction No. 1, after submitting questions not in controversy, told the jury if it found Sparks at the time and place in question was the agent and employee of the company and that acting for and on its behalf he alighted from the street car for the purpose of causing the automobile to be moved from the track in order to allow the street car to proceed on its way, and if it further found that he was "acting within the scope of his authority as such agent . . . as aforesaid, he then and there assaulted, struck, beat and injured plaintiff, and did so without just cause or excuse," then the verdict should be in favor of plaintiff and against both defendants.

The defendants say the instruction was erroneous for the following reasons: (1) No evidence Sparks was acting as the agent and employee of the company; (2) assumed Sparks was such agent and employee; (3) assumed Sparks struck and injured plaintiff without just cause; (4) and "submits to the jury the legal conclusion as to whether Sparks was acting as the agent, servant and employee of the" company.

It is plain the instruction does not assume the existence of any controverted facts; it submitted every question of fact essential to a verdict for plaintiff.

The phrase "acting within the scope of his authority" did not submit a question of law to the jury. Block v. United States Fidelity & Guaranty Company of Baltimore, 290 S. W. 429, 439. The instruction was not erroneous.

Plaintiff's instruction No. 2 was an instruction on the credibility of the witnesses. The defendants say the instruction was erroneous for the reason there was no material conflict in the evidence for the plaintiff and the evidence for the defendants.

We will not restate the evidence. It suffices to say the evidence of plaintiff and that of Sparks was sharply opposed on material questions of fact; and the jury could find one of them wilfully swore falsely. The instruction was proper. [Farmers State Bank v. Miller, 26 S. W. 863.]

Error is assigned to the action of the court in refusing instructions "J," "M," "O" and "P" requested by the defendants. Instruction J said that if the jury believed that Sparks struck the plaintiff out of resentment toward plaintiff and not for any duty which he owed to the company, then the company was not liable to the plaintiff. Instruction M would have told the jury that the company was

not responsible for any and every act committed by one of its employees; that before the company could be held liable for the acts of Sparks in engaging in an altercation with plaintiff, the jury must find that Sparks committed such acts "in accordance with the express or implied authority of the defendant . . . company, and in furtherance of said defendants' business."

Instruction O said that under no circumstances was plaintiff entitled to recover anything whatever from the company unless the jury found that Sparks in striking plaintiff was acting within the scope of his employment by the company. "And if you believe and find from the evidence that Sparks became personally angry at plaintiff solely because of plaintiff's conduct and statements at the time and place and solely because of said personal anger Sparks struck the plaintiff, then you are instructed that Sparks' acts were not within the scope of his employment and your verdict must be for the defendant" company.

Instruction P would have told the jury that if it found that at the time in question the operator of the street car and plaintiff "got into an argument," and that because of certain statements made by plaintiff to said operator Sparks became personally angry at plaintiff and solely because of "this personal anger Sparks struck plaintiff," then Sparks in striking plaintiff was not acting in furtherance of any business of the company and the company was not liable therefor.

Defendants obtained instruction K which told the jury that if it found that at the time of the altercation between plaintiff and Sparks the latter was not engaged in any business or upon any mission for the company but engaged in the altercation for personal reasons of his own or because he resented the statements and conduct of the plaintiff, then plaintiff could not recover against the company. This instruction submitted to the jury all of the questions of fact covered by instructions J, M, O and P in a manner as favorable to the company as it was entitled to have such questions submitted and, for that reason, if for no other, the refusal of the latter instructions will not cause reversal. The phrase "in accordance with the express or implied authority of the defendant" company in instruction M would have submitted to the jury a question of law.

The defendants contend the court erred in refusing to receive the various verdicts brought into court by the jury. For convenience we will refer to the so-called verdicts as first, second and third verdicts.

The jury retired to consider its verdict at 3:45 P. M. One hour later it brought in the first verdict wherein it found the issues in favor of the plaintiff and against the company and that plaintiff was entitled to compensatory damages in the sum of $2200. Sparks was not mentioned in the verdict. The trial judge took the verdict, read it, and said to the jury that no verdict could be rendered against the company "unless at the same time a verdict is rendered against the

defendant Sparks.'' Thereupon the court directed the jurors to go to their homes and to return on the morning of the next day. When court convened on the next day the court gave Instruction C-3, which told the jury that no verdict could be rendered against the company ''unless at the same time a verdict is rendered against the defendant Sparks.'' The jury retired to the jury room and presently returned into court the second verdict as follows: ''We the jury render a verdict of $1700 total damages against the K. C. Public Service Co. and $500 total damages against defendant Sparks.'' The court evidently read the verdict and then told the jury if it found against both defendants it must find for one amount and that it could not find for separate amounts against separate defendants. The court also gave to the jury Instruction C-4 which told the jury that if it found the issues against both defendants it must find for one amount and that it could not find for separate amounts against separate defendants. Again the jury retired to the jury room, and in a few minutes thereafter brought in the third verdict in which damages in the sum of $2200 was awarded against both defendants. This verdict did not say whether the damages awarded were compensatory or punitive. The jury was again set back to the jury room and thereafter on the same day returned a verdict for plaintiff against both defendants for $2200 compensatory damages. The defendants on each occasion objected to the action of the court in not receiving each verdict, objected to the court orally instructing the jury, moved for a mistrial and discharged of the jury. The objections were overruled and the motions denied.

The defendants claim the first verdict shows the jury was of the opinion Sparks was not guilty and that it did not desire to find against him. That verdict did not ''speak the truth'' as to Sparks; it did not mention him; it was therefore informal, and the court properly refused to receive it. [Keyes v. Chicago, B. & O. Co., 31 S. W. (2d) 50, 55.] The second and third verdicts were also informal, and for the same reason neither of them should have been received. The oral statements of the court to the jury when the first and second verdicts were returned were repeated in Instructions C-3 and C-4. In such circumstances we will not convict the trial court of error in making the oral statements. [Brunk v. Hamilton-Brown Shoe Co. et al., 66 S. W. (2d) 903, 908.]

After Instruction C-3 had been given and while the jury was still in the court room, the foreman of the jury asked the court: ''Does judgment have to be rendered against both defendants?'' The court answered: ''No. . . . You will have to read the instructions. That instruction clears up all the rest.''

When the third verdict was returned into court the following occurred:

"THE COURT (reading): 'We, the jury, render a verdict of $2200 total damage against both defendants the K. C. Public Service Company and Mr. Sparks. J. B. Schmeltz.' Did you mean that for compensation damages or punitive?

"MR. SCHMELTZ: Total damages of all kind.

"THE COURT: Mr. Schmeltz, you did not read your instructions. If you had read that last form you would be helped a good deal.

"MR. SCHMELTZ: We put it all in one.

"THE COURT: But I told you to state whether it is compensatory or punitive in that last instruction.

"MR. SCHMELTZ: You mean the last instruction there? Read it. The last one you gave this morning?

"THE COURT: No, sir. The other one on the form. Go back and determine whether this is for punitive or actual damages, please, and follow that form. You have plenty of forms there.

"MR. SCHMELTZ: We can state it for either one of the other—you don't have to mention all of them, do you?

"THE COURT: I think if you will read that it will help you. There is no hurry, gentlemen."

The defendants argue the oral instructions, the colloquies between court and jury and instructions C-3 and C-4 caused the jury to return a verdict against Sparks, which it did not desire to do. Instructions C-3 and C-4 were correct in form. It would have been proper for the court to have given those instructions before the jury brought in the first verdict. We think the legal situation is the same as it would have been had the instruction been given before the jury begun deliberation.

In none of the conversations between court and jury was there an intimation that the court thought the jury should find a verdict against either defendant.

In view of the rulings in the Brunk case, *supra*, and Keyes case, *supra*, we hold the oral statements of the court to the jury, the refusal to receive the several verdicts was not reversible error.

The judgment is affirmed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. *Shain, P. J.,* and *Bland, J.,* concur; *Kemp, J.,* not sitting.