Joseph A. RIEHLE, Appellant,

v.

BROADWAY MOTORS, INC.,
a Corporation, Respondent.

No. 23305.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1961.

Donald L. Mason, Mason, Gant & Gepford, Kansas City, for appellant.

Henry G. Eager, Kansas City, Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, of counsel, for respondent.

MAUGHMER, Commissioner.

This is an action for damages based upon alleged fraudulent misrepresentation in the sale of a used automobile. The misrepresentation charged is that the defendant represented the accrued mileage of the vehicle to be 23,550 miles when in truth and fact it was in excess of 70,000 miles. The verdict of the jury as finally received, accepted and recorded, was for $55 actual and $250 punitive damages. Judgment accordingly was entered and plaintiff has appealed. Defendant has not appealed.

Three assignments of error are presented: (1) The Court erred in making verbal remarks to the jury after it had returned a verdict improper in form, said verbal remarks being in effect, a verbal instruction. (2) These oral remarks misstated the law on damages, misdirected on the method of assessing actual damages and was in conflict with the written instructions. (3) It was error to overrule plaintiff's motion for a mistrial following defense counsel's remarks made twice in the presence of the jury that it could find actual damages in the sum of $1.

Defendant Broadway Motors, Inc., is a corporation with its business quarters located at 3401 Broadway, Kansas City, Jackson County, Missouri, and is engaged in the business of selling new and used auto-

mobiles. On April 2, 1959, plaintiff and his wife, having looked at used cars elsewhere and three times at defendant's used car lot, decided to make an effort to buy a green 1957 Ford Tudor Sedan which they had seen on defendant's lot. Their dealings with defendant company were all with salesman Brendel. They had tried out this particular car, had driven it about 1½ miles and noted that the speedometer registered 23,500 miles plus. It carried a marked price of $1,495. Plaintiff offered $1,050 cash, plus his 1950 Chevrolet. This offer was accepted and the trade consummated. It is not contended that any verbal representations were made that the mileage shown on the speedometer was the true and actual mileage. However, plaintiff said that he and his wife, in the presence of Mr. Brandel, discussed the speedometer mileage reading. They testified that they relied upon the reading and would "not have bought anything but a low mileage car". Mr. and Mrs. Riehle testified that "they had trouble with the car" almost immediately. It smoked and used an excessive amount of oil. They returned the car to Broadway Motors three or four times where work was done on it. Mr. Riehle said he paid "half of the material and half of the labor"—a total he thought of between $55 and $60. He had repair work done elsewhere, the aggregate repair costs being $261, and the automobile, he said, operated very well thereafter.

Richard G. Koenig was called as a witness on behalf of plaintiff. He testified that he was the former and original owner of the 1957 Ford involved in this controversy; that he bought the vehicle new in December, 1956; that he owned and operated it until December, 1958, when he traded it to defendant company and that when he traded, the speedometer showed a reading of more than 70,000 miles—he thought 70,900 miles. He said that three or four weeks later while his automobile was being serviced at Broadway Motors he noticed his old car standing on the lot and went over to look at it. At that time he noted the speedometer showed approximately 50,000 miles.

Four witnesses who qualified as experts gave their opinions as to whether or not the miles a used automobile had been driven is an accurate yardstick by which to measure and determine its value. Their expressed views may, we think, be summarized this way: Mileage alone is not a sure and safe criterion by which to measure value. One automobile of the same make and vintage with 70,000 miles which has been properly maintained, may be a more serviceable unit and more valuable than one driven only 23,000 miles which has been abused and has not been properly and promptly serviced. Other tests are more important than the miles driven. However, mileage is one determinative factor and most prospective buyers regard it as of high importance. Mr. Robin G. Bentrup, owner of Broadway Motors, and his salesmen stated that they had not changed the speedometer reading.

The case was submitted to the jury on both actual and punitive damages. It is not contended that the instructions submitting these issues were in any way improper or erroneous. After a proper instruction upon the measure of actual damages, the Court gave Instruction No. 3, which we examine more fully as an essential prelude to consideration of the principal question presented by the appeal. Instruction No. 3 charged the jury in part: *"If you find in favor of the plaintiff for actual damages in any amount * * * and you further find* and believe that the defendant's acts as submitted for your determination in Instruction No. 1, and upon which plaintiff's right of recovery depends, were done maliciously, if at all, then in addition to compensation for actual damages, if any, you also may award plaintiff such amount as punitive damages as you may deem proper under all the facts and evidence * * *"* (Emphasis added). Instruction No. 2 told the jury to assess plaintiff's actual damages "at such sum as you may believe and find from the evidence was the difference, if any, between the value of the automobile" which plaintiff purchased and its value if the mileage had been 23,550 miles. It is apparent,

we think, that the instructions told the jury: (1) the actual damages, if any, must first be considered and determined by the jury and must be based upon the evidence; (2) punitive damages were not to be awarded unless and until actual damages were allowed.

After deliberation the jury returned a verdict which we set out verbatim:

"We, the jury, find the issues for the plaintiff and against the defendant and do assess his actual damages at blank dollars, and we further find the issues for the plaintiff and against the defendant for punitive damages and do assess his punitive damages at $250.00. Signed, Mr. Goodwin, Foreman." Whereupon, the following occurred:

"The Court: Members of the jury, under the instructions of the Court, there must be some finding for actual damages; that is, if you are going to find the issues for the plaintiff on the count of punitive damages, there must be some finding with respect to the actual damages. And the amount of the actual damages, if any, is entirely up to the discretion of the jury.

"Mr. Eager: If the Court please, may I ask that you charge them, since you have instructed that, not in writing, that you instruct them they may find the sum of $1.00 actual damages?

"The Court: They may find any amount actual damages that they want and they feel the evidence would warrant.

"Mr. Eager: Including one dollar.

"The Court: What I am trying to tell you is that in order to find the issues for the plaintiff on the matter of punitive damages there must be a finding in favor of the plaintiff on actual damages, and that amount can be *whatever you find under the evidence the plaintiff would be entitled to* and the amount is a matter within your discretion and jurisdiction. So I will hand you back the verdict and let you go back to work a little more. (Emphasis added). (Whereupon, the jury again retired to their room to deliberate on

their verdict. The following proceedings were had and entered of record Outside the Presence and Hearing of the Jury):

"Mr. Eager: Let the record show that the defendant objects to the Court's oral instructions here as *not in writing*, and in failing to indicate to the jury to specifically retire and reconsider the instructions as a whole, and in failing specifically to tell them actual damages may be in any sum whatsoever, including one dollar, and in failing to accept this as an illegal and inconsistent verdict under the evidence, or to supply nominal actual damages of one cent or one dollar. To all of which we except for the record on the grounds it is an attempt to coerce a verdict in favor of the plaintiff on actual damages in some sum which the jury heretofore has not found at all period.

"The Court: Are you asking that the Court declare a mistrial and discharge the jury?

"Mr. Eager: No, sir, I didn't ask you that.

"Mr. Mason: Judge, I am. And I was waiting for Mr. Eager to ask for it. I made no comments prior to this time, Your Honor, because I thought it should be made out of the hearing of the jury. This is my first opportunity to take exceptions to the Court's action and more fully to Mr. Eager's action in making remarks and comments to the jury. I think Mr. Eager's remarks, which are in the record and which should also show were made in the presence of the jury, as to they could find just one dollar, which he expressed, was highly inflammatory, prejudicial to this plaintiff. I move the Court declare a mistrial and discharge the jury, both on the grounds which I have enumerated and also on the basis that the verdict which the jury brought back was not in proper form, and, further, on the comments and oral instructions made by the Court to the jury.

"Mr. Eager: I want to point out that first verdict—actually I did not have a

chance to see the original form, of course, the Court didn't have a chance to give it to us, but that first verdict itself could very well be corrected by the Court supplying a clerical nominal amount of actual damages so that the verdict at that time, which was formally returned, would be fully consistent under the instructions. If they left it blank, it was, in effect, a finding of no actual damages. That is the burden of my observation. If they come back with $250.-00, I think it is coercion to that extent.

"The Court: Both motions will be overruled."

Thereafter the jury returned a verdict signed by 10 of its members which in words and figures reads:

"We, the jurors, find the issues for the plaintiff and against the defendant and do assess his actual damages at $55.00 and we further find the issues for the plaintiff and against the defendant for punitive damages and do assess his punitive damages at $250.-00."

Apparently the jurors did not understand that a finding of actual damages in some amount was a prerequisite to the allowance of punitive damages even though the written instructions did so state. The fact that the jurors did not readily grasp this direction as contained in the instructions is not, we think, the fault of the trial judge or even of the jurors. It is rather chargeable to our procedural system which requires long and rather involved written instructions instead of allowing the Court to charge the jury in simple language of short understandable sentences as is the practice in federal courts and in many of our state courts.

Appellant on appeal asserts: (1) The Court erred in making oral remarks to the jury which in effect amounted to verbal instruction which is forbidden, and (2) such verbal instruction on damages was a mistatement of the law, a misdirection and was in conflict with the written instructions. These two assignments may be considered together. In support of his position appellant invites our attention to Peck v. Springfield Traction Co., 131 Mo.App. 134, 110 S.W. 659; to Boyd v. Pennewell, Mo.App., 78 S.W.2d 456, and to Baker v. Fortney, Mo.App., 299 S.W.2d 563, 566. In the Peck case the Court, having given written instructions withdrawing certain evidence, made an oral statement in explanation of the withdrawal and reiterating that the jury should not consider it. The Appellate Court declared that while instructions should always be in writing, the making of such an oral statement could not have prejudiced the plaintiff, and affirmed the judgment. In the Boyd case the foreman of the jury came into the court room and engaged in a private conversation with the trial judge as to the allowance of costs. The exact conversation between the Court and the foreman was not recorded and although counsel were seated in the court room they were not invited to nor did they participate in the meeting even to the extent of hearing the discussion. The action of the trial court in granting a new trial was approved. In the Baker case a juror inquired if they should consider the fact that plaintiff had already received $1,600 as property damage from his own insurance company. The Court said: "Oh, certainly"—"You know we don't beat insurance companies out of money in these courts unless there is a reason for it". This comment was held to be a misdirection, misleading, confusing and erroneous. Neither of the holdings in these three cases determines the issues in our case.

In Kaimann v. Kaimann Bros. Inc., Mo. App., 182 S.W.2d 458, 462, the Court said: "Where the jury returns a verdict containing a patent ambiguity or defect, it is the duty of the court, at the time the verdict is read, to call the jury's attention to such ambiguity or defect so that the jury itself may correct its verdict before it is received and judgment entered thereon."

In Counts v. Thompson, 359 Mo. 485, 222 S.W.2d 487, 494, the jury presented the following inquiry to the Court: "What is the

maximum fee or percentage basis allowed by Missouri law to plaintiff's counsel?" The Court orally told the jury that there was no such law and that it was a matter of contract between the parties and the question should not be considered by the jury. On appeal the Supreme Court said: "The jury obviously needed further information and it was the duty of the judge to furnish it. Certainly our system of written instructions does not go so far as to require a trial judge to stand mute before the jury when they make such a request for information. Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 66 S.W.2d 903, loc. cit. 908; Hoeffner v. Western Leather Clothing Co., Mo.App., 161 S.W.2d 722, loc. cit. 731; Meyer v. Dubinsky Realty Co., Mo.App., 133 S.W.2d 1106; Conway v. Kansas City Public Service Co., 234 Mo. App. 596, 125 S.W.2d 935. There was nothing incorrect in what the judge said to the jury, and if defendant considered that more specific directions were necessary, it should have offered an additional instruction. See Schonwald v. F. Burkart Mfg. Co., 356 Mo. 435, 202 S.W.2d 7, loc. cit. 17. We also agree that it was not necessary to discharge the jury because they asked the question. See McComb v. Vaughn, 358 Mo. 951, 218 S.W.2d 548."

The St. Louis Court of Appeals said this on the question in Meyer v. Dubinsky Realty Co., 133 S.W.2d 1106, 1111, 1112: "So far as the giving of oral instructions was concerned, the court simply admonished the jury that if interest was to be allowed, it was for them to compute the amount, and that under our local practice the court was denied the right or privilege of saying anything to the jury about the amount of the verdict that they should return. Such remarks to the jury did not rise to the dignity of oral instructions upon any issue in the case, but to the contrary indicated quite unmistakably, not only a proper consideration on the part of the court for the function of the jury, but also a most careful and commendable attempt to handle the somewhat unusual situation before the court without doing the least prejudice to the rights of either party."

Lindstrom v. Kansas City Southern Ry. Co., 202 Mo.App. 399, 218 S.W. 936, 937, was an action for both actual and punitive damages arising out of an alleged assault. The jury verdict was "For actual damages none" and assessed punitive damages at $500. This court, on appeal, said: "Clearly the verdict is contradictory, and no judgment could have been rendered thereon. Hoagland v. Amusement Co., supra, 170 Mo. 335, 345, 70 S.W. 878, 94 Am.St.Rep. 740; Mills v. Taylor, supra, 85 Mo.App. 111, loc. cit. 116. The court, before receiving and recording the verdict, should have sent the jury back, with instruction to return a proper verdict, and, upon his failing to do this, and after the jury was discharged, he should have granted a new trial. Newton v. St. Louis & S. F. R. Railroad Co., 168 Mo.App. 199, 153 S.W. 495." The Lindstrom case was approved by this court on the same point in Smith v. Rodick, Mo.App., 286 S.W.2d 73, 77.

■ We believe the Court not only had the right but was under a duty to direct the jury further in an attempt to secure a proper verdict. And if its explanatory remarks were made in the presence of counsel (as they were), if such oral instructions did not amount to misdirection, and if same were not confusing to the jury, then the Court should not be convicted of error for such action. We find nothing in what the Court said that is inconsistent with the written instructions or incorrectly states the method to be followed by the jury in arriving at its allowance of actual damages. It is true, as plaintiff claims, that the Court did say: " * * * and the amount of the actual damages, if any, is entirely up to the discretion of the jury." However, the Court went on and said: "What I am trying to tell you is that in order to find the issues for the plaintiff on the matter of punitive damages there must be a finding in favor of the plaintiff on actual damages, and *that*

*amount can be whatever you find under the evidence* the plaintiff would be entitled to and the amount is a matter within your discretion and jurisdiction." (Emphasis added). What the Court said at this particular time must all be considered together—not just part of its comment. Under the written instructions, under the evidence in this case, and under the law, the amount of the actual damages was for the jury to decide. We believe it might have ranged from a nominal figure upward to at least $261, the total amount expended for repairs. We decide these first two points against appellant.

■■ The third complaint arises from the remarks of defendant's counsel made while the jury was in the court room after its first verdict and during the Court's explanatory comments. We again set out the record:

"Mr. Eager: If the Court please, may I ask that you charge them, since you have instructed that, not in writing, that you instruct them they may find the sum of $1.00 actual damages?

"The Court: They may find any amount actual damages that they want and they feel the evidence would warrant.

"Mr. Eager: Including one dollar." The transcript does not recite that counsel's comments were made out of the hearing of the jury. We conclude therefore that they were made in the presence and within the hearing of the jury. It is the recognized and accepted practice and procedure in Missouri for suggested instructions to be presented to the Court outside the presence and hearing of the jury. However, we believe that in this case, under the evidence and instructions, the jury could properly have returned a plaintiff's verdict for actual damages in a nominal amount. This being true, defendant's counsel could properly, in his regular argument, have told the jury it was authorized under the Court's instructions to return a verdict of $1 actual damages. This being so, it is difficult to

find error in his having said it at this later time, even though courtesy and orderly procedure required that his suggestions after submission, be made to the Court and not to or in the presence and hearing of the jury.

Moreover, the jury did not heed or accept the suggestion of defense counsel. It is not contended nor do we find the verdict to be either under or over what a fair consideration of the evidence required.

■ Besides, the granting of a new trial or directing a mistrial for the misconduct or indiscretion of lawyers (or jurors and a trial judge) occurring prior to rendition of a verdict, rests largely within the discretion of a trial court. State v. Taylor, Mo., 336 S.W.2d 495. As stated in 66 C.J.S. New Trial § 33, p. 123: "On the other hand, a new trial for misconduct of counsel is not granted for disciplinary purposes but to correct a wrong resulting therefrom, and to afford ground for new trial it should appear that the misconduct probably influenced the verdict."

■ Since we have found the trial judge's remarks were explanatory of and not conflicting with the written instructions and were made with the purpose of helping the jury reach a proper and acceptable verdict, we do not think such remarks should have improperly influenced the verdict. The verdict itself, as we have reviewed the evidence, is a proper verdict and within reasonable limits. The trial judge by his actions in denying a new trial or a mistrial, has placed his stamp of approval upon the verdict and judgment, all in the exercise of his proper discretion. When a jury comes into court with a wholly unexpected question or suddenly presents the Court with an unusual situation, both the Court and counsel are presented with a sudden emergency. And under such emergency, we think that their acts and words should not void an otherwise proper verdict, which is reasonable as to results, unless manifest error is apparent, or prejudice appears, or the trial judge's discretion

in such matters has been shown to have been abused. It is our belief that the record and result here show none of these things.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGH-MER, C., is adopted as the opinion of the Court.

All concur.