Henry W. KASPER, Plaintiff-Respondent,

v.

Louis G. HELFRICH, Defendant-Appellant.

No. 32399.

St. Louis Court of Appeals.

Missouri.

Oct. 17, 1967.

Armstrong, Teasdale, Kramer & Vaughan and John J. Cole, St. Louis, for appellant.

James F. Koester, St. Louis, David G. Dempsey, Clayton, for respondent.

CLEMENS, Commissioner.

The plaintiff sued the defendant for personal injuries and property damages caused by a collision when defendant drove into the rear of plaintiff's car. Plaintiff got a verdict for $14,250 personal injuries and $750 property damage. Defendant appeals from the $15,000 judgment.

Since the appeal focuses on claimed trial errors rather than liability, a condensed statement of the verdict-consistent evidence will do: On the night of September 19, 1959, both parties drove north on U.S. Highway 67. Plaintiff stopped behind a line of cars waiting to cross St. Cyr Road. Going about 40 m. p. h., the defendant drove into the rear of plaintiff's car, forcing it into the rear of the Mertensmeyer car. Plaintiff went to the jury on MAI 17.16, the rear-end collision instruction. The defendant conversed negligence and resultant damages with MAI 29.04(4).

The defendant's after-trial motion and brief urge seven errors: (1) restricting voir dire examination, (2) admitting parts of a police report, (3) changing plaintiff's damage instruction by deleting reference to future damages, (4) refusing defendant's withdrawal instruction on unrelated medical expense, (5) prejudicial jury argument, (6) answering the jury's question about a nine-juror verdict, and (7) excessive verdict.

These points are matters addressed first to the discretion of the trial court. Judicial discretion is the option the trial judge has in doing or not doing a thing that cannot be demanded by a litigant as an absolute right; appellate courts will interfere with the trial court's exercise of discretion only when it has been manifestly abused; that discretion is abused only when the trial court's ruling runs against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to show a lack of careful consideration and shock the sense of justice; if reasonable men can differ about the propriety of the action taken by the trial court, then the trial court did not abuse its discretion. Arno v. St. Louis Public Service Co., 356 Mo. 584, 202 S.W.2d 787 [3], and Anderson v. Robertson, Mo.App., 402 S.W.2d 589 [1–4]. Furthermore, we are directed by Civil Rule 83.13(b), V.A.M.R., to reverse a judgment only for errors materially affecting the merits of an action. We consider each of defendant's points in the light of these principles.

### Voir Dire Examination

Defendant first claims his counsel was improperly denied the right to ask the veniremen whether they would be prejudiced against the defendant by his failure to appear and testify in person. Plaintiff says the question did not seek to learn the existing state of mind of the veniremen but instead sought a commitment on how they would react later to a hypothetical situation. Although this is a valid distinction, we need not decide it. Instead, we look first to the circumstances in which the trial court ruled.

This was a free-swinging trial. Repeatedly both counsel "went outside the record." Objections, motions and arguments were made in the jury's hearing. Thrust quickly met counter-thrust. In this acrimonious atmosphere the trial court was called on to rule. Before asking about prejudice, defendant's counsel had factually told the panel that the defendant "is not here today on doctor's advice and probably will not testify because of his condition." Plaintiff's counsel retorted that the judge of the assignment division had just denied

defendant's motion for a continuance sought on that same ground. Counsel then argued—within the panel's hearing—about the contents of a doctor's affidavit and the effect of denying the continuance. Five pages of the transcript are taken up by objections, motions, arguments and rulings. The trial court's final ruling sustained plaintiff's objection to defendant's question about prejudice. From the bench it was apparent that by then the veniremen had been improperly exposed to so much extraneous information that it would likely be difficult for them to lay all this aside and truthfully answer a question about existing prejudice within their own minds. Counsel for defendant had brought on this confusion by his factual, unsupported statement of defendant's physical condition.

Considering the discretion allowed a trial court in controlling voir dire examination, we cannot say there was an abuse of discretion.

### Police Report as Hearsay

Defendant contends the court erred in allowing plaintiff, in rebuttal, to read part of a police report as an admission against defendant's interest. The defendant had stipulated that Exhibit F was a copy of the official police report, kept in the regular course of business. Later, plaintiff offered Exhibit F in evidence but did not then read it to the jury. The defendant raised no objection to introducing the exhibit.

■ According to the part of the police report plaintiff wanted to read, the drivers of the three cars had told the investigating officer: "Car 2 [plaintiff] and 3 [Mertensmeyer] was stop (sic) with about 5 cars in from of them when car 1 [defendant] hit them from behind." Defendant then objected on the grounds that the evidence was hearsay and was not proper rebuttal. Having already agreed to the authenticity and introduction of the police report, it was too late for defendant to raise a general hearsay objection to the re-

port as a whole. Nor was the quoted part of the report vulnerable to the hearsay objection, since it was an admission against the defendant's interest. Nor was it error to use the report as rebuttal. The defendant's evidence included his deposition wherein he had denied making a statement to the investigating officer. The police report refuted this denial, so it was proper rebuttal.

■ Moreover, the statement in the police report attributed to the defendant was harmless, since it did not differ materially from defendant's own version of the collision. By his deposition he admitted the collision with plaintiff's stopped car. The statement in the police report was consistent with the defendant's description of the collision given in his deposition. Our conclusion, fortified by the trial court's denial of defendant's after-trial motion, is that the point fails to present an error materially affecting the merits.

### Damage Instruction

At plaintiff's request the court gave Instruction 6, MAI 4.01, including the bracketed clause "and is reasonably certain to sustain in the future." At the outset of plaintiff's closing argument his counsel read this instruction to the jury. He immediately announced, "Your Honor, I think there is an error in this instruction." There was a colloquy off the record. The court then stated: "Ladies and Gentlemen, I've accepted the suggested correction. It relates to Instruction 6, which I will now read in its corrected form." The court did so, leaving out the future damage clause. Defendant neither objected nor asked for further action. He now claims the court erred in not "telling the jury to disregard the instruction as originally read."

■ Conceding merit for the sake of argument, the defendant's silence would preserve nothing for review. Civil Rule 83.13(a), V.A.M.R.; State ex rel. Miser v. Hay, Mo., 328 S.W.2d 672 [5]. But there

is no merit, since a trial court may correct an erroneous instruction anytime before verdict. As in Wells v. Wilson, Mo., 293 S. W. 127 [1, 2], we presume the jury understood the trial court's statement about Instruction 6 being corrected.

As a dependent point defendant complains that despite the court's revision of Instruction 6, the plaintiff nonetheless argued future damages and permanent injuries. The defendant says "the court only sustained defendant's objection as to a claim for permanent injuries."

In the final portion of his closing argument plaintiff's counsel spoke of the testimony of plaintiff's treating physician. The doctor had last examined plaintiff on the day of trial and he testified that plaintiff still had a 50 per-cent disability of his back and could not bend over. Plaintiff's counsel argued that defendant's counsel "would have you believe * * * [plaintiff] will walk out of here a healthy man." Defendant then objected "to the argument that they are to consider future disability since that is not an issue in the case." The court replied: "I'm not clear that Mr. Koester was so arguing, but it is a fact that the claim does not include any claim for any permanent injuries into the future."

■ The defendant has not adequately preserved this point for review. He seeks review of a part of the plaintiff's jury argument that is or may have been responsive to something defendant had said in his own argument. In such a case the transcript should include both arguments. State v. Fuller, Mo., 302 S.W.2d 906 [5, 6]. Here, the transcript contains only the plaintiff's argument, not the defendant's. So we cannot determine the merits of defendant's objection. But the trial court had heard the defense argument plaintiff's counsel was referring to, and could adequately assess both arguments and the objection. The court's ruling was responsive to that objection. There was no request for further action. Giving weight to the discretion allowed a trial court in controlling jury argu-

ments, we hold there was no abuse of that discretion.

We find no prejudicial error in either revising the damage instruction or in controlling the argument concerning plaintiff's injuries.

*Withdrawal Instruction*

Some of plaintiff's ailments were unrelated to his accidental injury. His testimony about medical, hospital and drug expenses concerned charges for treatment of both accidental and non-accidental ailments. This distinction came out in both direct and cross-examination, and the bills were received in evidence without objection. The court refused defendant's modified MAI 30.01 telling the jury not to consider expenses unrelated to the accident The defendant now claims prejudicial error.

■ MAI 30.01 is a cautionary instruction, properly used where the trial court thinks the evidence might lead the jury to consider a false issue. See MAI Committee Comment; Estes v. Desnoyers Shoe Co., 155 Mo. 577, 56 S.W. 316 [6]. Here, the cross-examination clarified the overlapping expenses. Damage instruction MAI 4.01 limited the jury's consideration to damages sustained "as a direct result" of the collision. The cross-examination and MAI 4.01 combined to avoid consideration of a false issue. We cannot say the court abused its discretion in refusing to give a negative instruction on a matter it had already stated in the affirmative.

*Inflammatory Argument*

■ Defendant's fifth point preserves nothing for review. In his brief he complains specifically of three rulings made to his objections during plaintiff's closing argument. Defendant has failed to obey Civil Rule 83.05(a) (4) and (d), V.A.M.R., requiring appellants' briefs to designate the transcript pages whereon statements may be found and verified. We need not seine

through transcripts to learn whether alleged errors exist and are prejudicial. Flanigan v. City of Springfield, Mo., 360 S.W. 2d 700 [7].

Furthermore, defendant did not adequately allege the errors in his after-trial motion and, thus, did not preserve the points for review. As said in Schneider v. Southwestern Bell Telephone Co., Mo.App., 413 S.W.2d 16 [1]: "The office of a motion for a new trial is to gather together the rulings complained of as erroneous, and solemnly and formally present them, one by one, in black and white to the judge in order that he have a last chance to correct his own errors without the delay, or expense, or other hardships of an appeal. This much is required. Less does not preserve the rulings for review."

 Defendant's after-trial motion did not give the trial court this chance to correct the claimed errors. The motion merely said: "The Court erred in permitting plaintiff's counsel to engage in inflammatory, prejudicial and incompetent closing argument over the objections of the defendants and in particular, but not by way of limitation, in permitting plaintiff's counsel to mis-state the evidence and the testimony of the witnesses." That was not enough. "Although an allegation of error may be general in a motion for a new trial where definite objections or requests, with specific statements of ground therefor, were made during the trial [Civil Rule 79.03, V.A.M.R.], surely an allegation of error in a motion for a new trial pertaining to argument should at least direct the trial court's attention to the matters or subjects in argument of which the movant complains, rather than an allegation making reference to the whole of all arguments." Beard v. Railway Express Agency, Inc., Mo., 323 S.W.2d 732 [17, 18].

So, we hold that the defendant has not properly preserved his point—either in the trial court or here.

*Answering the Jury's Question*

Defendant contends the trial court erred in answering a question by the jury during deliberation. The jury sent the judge a written note: "If all the jurors agree for the plaintiff but do not all agree upon the amount how should our verdict be written out?" After consulting with counsel the judge answered the question by a written note: "* * * If nine (or more) of your number agree upon an amount, those nine (or more) should sign the verdict. * * *" Defendant objected to this answer, suggesting that the court merely refer the jury to the form of verdict instruction MAI 32.02 and contending that the court's written answer encouraged a verdict by nine jurors. Thereafter a verdict was returned for plaintiff signed by eleven jurors.

We stress the jury's question about a non-unanimous verdict: "* * * how should our verdict *be written out*?" To us, MAI 32.02 seems to answer the question. But to laymen who are unaccustomed to rendering verdicts, and who do not closely analyze MAI 32.02, there could well be doubt about "how should our verdict be written out?" It was a fair inference that the jury had considered MAI 32.02 but did not understand just how to apply it to their unanimous conclusion that the plaintiff should recover and their non-unanimous conclusion as to how much.

 The trial judge who tries to help a jury follow the court's instructions and bring in a proper verdict is indeed treading on thin ice. But where jurors are uncertain about the form of their verdict—rather than about their decision on the merits— it is proper for the court to instruct them on how to return a proper verdict. Sullivan v. Union Electric Light & Power Co., 331 Mo. 1065, 56 S.W.2d 97 [12, 13]; Martin v. Lingle Refrigeration Co., Mo., 260 S.W.2d 562 [8]; Riehle v. Broadway Motors, Inc., Mo.App., 350 S.W.2d 89 [1, 5].

 Reviewing the trial court's action here, we find that the written answer con-

cerned only the form of the verdict; it was not coercive and it was not confusing. Hence, there was neither error nor prejudice. Defendant's point is denied.

### Excessive Damages

■■■ We review the evidence of damages in a light favorable to the plaintiff. A condensed statement will do.

Before the collision plaintiff lived on and worked a 180-acre grain farm. Also, he regularly worked as an inspector at an aircraft factory. Although he previously had some physical ailments, these had not interfered with his job, his farming, or his active participation in bowling, baseball and basketball. After the collision plaintiff suffered from continuous neck and back pains and general debility. All this persisted, and although plaintiff kept his job he had to give up farming. He was hospitalized for seven weeks. He wore a cervical collar for a year, and at the time of trial—five and a half years after the collision—he was still wearing a back brace, still taking therapeutic treatments, still in pain, and had a 50 per-cent limitation in bending his back and turning his head. Several doctors had treated him and recommended a lumbosacral fusion, but plaintiff declined. Further, plaintiff testified to these special damages: six years' loss of farm income at $2,000 to $3,000 a year; loss of wages, $1,100 to $1,500; hospital and medical expenses, $1,700. The total was more than the verdict.

■■■■ We have found no prejudicial error leading to the jury's verdict. Setting the amount of that verdict was an exercise of the jury's fact-finding power—a power that courts are reluctant to curtail. Coffman v. St. Louis-San Francisco Ry. Co., Mo., 378 S.W.2d 583 [11]. Moreover, the trial court had authority to reduce the verdict by remittitur but declined. We must give consideration to those powers of the jury and trial court, and may interfere with the amount of the judgment only when we conclude it is grossly excessive and shocking to the judicial conscience. Ward v. City Nat'l Bank & Trust Co. of Kansas City, Mo., 379 S.W.2d 614 [11], and Peterson v. Kansas City Public Service Co., Mo., 259 S.W.2d 789 [7]. The record before us warrants no such conclusion.

Finding no prejudicial error, the judgment is affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.